No. 44,991

Ruby Wood, *Appellant* and *Cross Appellee*, v. J. W. Gautier and J. R. Gautier, Partners, d/b/a Gautier Implement Company, *Appellees* and *Cross Appellants*.

(439 P. 2d 73)

Opinion filed April 6, 1968.

*Arthur C. Hodgson*, of Lyons, argued the cause, and *Tudor W. Hampton*, *Jerry M. Ward*, and *Herb Rohleder*, all of Great Bend, were with him on the brief for the appellant and cross appellee.

*H. Lee Turner*, of Great Bend, argued the cause, and *J. Eugene Balloun* and *Max E. Eberhart*, both of Great Bend, and *Everett L. Baker*, of Lyons, were with him on the brief for the appellees and cross appellants.

The opinion of the court was delivered by

Harman, C.: This appeal involves claims for damages arising from a collision of two vehicles at a rural intersection.

Plaintiff Ruby Wood commenced the action by filing her petition for damages for personal injuries sustained by her as one of the drivers. Named as defendants were J. W. Gautier and J. R. Gautier, partners, doing business under the name of Gautier Implement Com-

pany. Highly summarized, she alleged in her petition that on September 4, 1962, at about 10:45 a. m. she was driving her husband's automobile south on a blacktopped county road about eight miles south of Geneseo, Kansas, at a point where it is intersected by an east-west dirt township road; that Harold C. Sampson, defendants' employee, while acting in the scope of his employment, was driving a pickup truck west on the township road; that as a result of Sampson's negligence, the two vehicles collided in the intersection, injuring plaintiff, for which she claimed $200,000 damages.

Defendants answered, admitting the collision, but denying negligence on their part and asserting contributory negligence as a defense. Defendants filed a counterclaim in which they conceded Sampson was in the scope of his employment at the time of the collision; they alleged Sampson died as a result of the collision which was caused by plaintiff's negligence; that they and their insurance carrier had paid benefits under the workmen's compensation act to his widow and minor children and thereby became subrogated to that extent to any recovery, and they further alleged they brought the action to recover damages for Sampson's wrongful death on behalf of the widow and minor children, his heirs at law. Damages in the sum of $25,000 were sought.

Subsequently, the widow of Harold C. Sampson, filed a separate wrongful death action in the same court against Ruby Wood, seeking recovery for herself and minor children because of her husband's death in the collision. Upon Ruby's motion the trial court dismissed this separate action, consolidating it instead with that initiated by Ruby.

Trial was had to a jury. The jury answered special interrogatories finding negligence which was a direct cause of the collision on the part of both plaintiff and Harold C. Sampson (failure to keep proper lookout), and it returned a general verdict denying recovery for either party. Motions for new trial by each side were overruled, judgment was entered on the verdict and each side has appealed. Neither appeal questions the sufficiency of the evidence in support of the interrogatories or verdict. The record on appeal is therefore somewhat meager on the circumstances of the collision except it does indicate this was a collision at a "blind" intersection where speed, lookout and control of vehicles become all-important questions of fact.

So far as the jury was concerned, the trial on the counterclaim

for the wrongful death of Sampson was conducted as though the heirs at law of the decedent Sampson were seeking to recover damages from the plaintiff Ruby Wood. The instructions to the jury on the measure of damages to be used in the event of a verdict for the heirs were the usual ones in a wrongful death action of a spouse and a parent, being a combination of those found in PIK 9.30 and PIK 9.31. No mention was made of any subrogated recovery for the benefit of the workmen's compensation carrier as authorized by K. S. A. 44-504. The trial court, by way of pretrial ruling, prohibited mention to the jury by plaintiff of this aspect of the case. Plaintiff sought to bring the subject of subrogation to the attention of the jury by way of questioning, instruction to the jury and in the closing argument, and she assigns error in the court's refusal to permit this.

These questions, raised by plaintiff on the principal appeal, have nothing to do with her cause of action against defendants—they are pertinent only to plaintiff's defense of the counterclaim against her. Plaintiff won this latter lawsuit (which upon cross-appeal we are affirming). Any decision we might make on the questions raised could have no effect on the rights of the parties and would be purely academic, and we express no opinion on them. This court will not decide issues where its judgment can have no effect on the rights of the parties (*Kendig v. Kretsinger,* 197 Kan. 186, 415 P. 2d 250; *Taylor v. State,* 198 Kan. 648, 426 P. 2d 159).

Plaintiff's father testified as a witness for her. His testimony purported to show a change in her mental condition following the collision. He was then vigorously cross-examined but responded only with vague and inconclusive answers. Plaintiff assigns error in the cross-examination permitted. She fails, however, to point out impropriety in the questioning or how she was harmed by any answers given. In any event, the testimony went only to the issue of damages—not the issue of liability upon which the jury decided the plaintiff's cause of action adversely to her, and there could have been no prejudice to her in the examination.

Plaintiff contends the trial court erred in permitting defendants, over her objection, to cross-examine her family doctor as to his treatment of plaintiff over a period of sixteen years prior to the date of the collision. We cannot agree. Out of deference to plaintiff we will not go into that cross-examination except to say it revealed a condition long prior to the collision for which plaintiff sought to recover substantial damages from defendants as a result

of the collision, and was highly relevant. Moreover, as with the last specification of error, it would be difficult to spell out prejudice even if the testimony were considered erroneous because it bore primarily on the issue of damages and the jury found against her on the issue of liability because she failed to keep a proper lookout.

The next assignment of error is that the trial court refused to give plaintiff's requested instruction that she was entitled to the benefit of a presumption of the use of due care in view of the fact she suffered a complete loss of memory relative to the immediate circumstances of the collision. Plaintiff's premise of loss of memory is unsupported by the record—in fact the contrary appears. She testified she was traveling around fifty miles per hour, maybe a little more, as she approached the intersection and when she first saw the pickup truck; that she first saw the pickup three or four car lengths from the blacktopped road; there were sunflowers, weeds and feed growing at the intersection which obstructed her vision; she was familiar with the intersection; that the pickup came out from behind the sunflowers and was moving very slowly across the intersection, only about ten or fifteen miles per hour; she felt that the county blacktopped road had precedence over the township road. She did not testify she had any loss of memory respecting the collision. More need not be said.

Misconduct of counsel in several respects is charged by plaintiff. Several of the charges are based upon incidents occurring prior to trial and concededly having nothing to do with the jury's verdict determining this lawsuit. The record does reflect considerable tension between counsel, and between the court and counsel for defendants, much of it evidently generated from incidents in previous litigation. Defendants' counsel defend the challenged actions as requisite to good advocacy in behalf of their clients under the circumstances. The case was hotly contested throughout. In view of this state of the record we are inclined to discuss briefly only those matters charged which could have had a direct connection with the outcome of the trial.

The principal matter charged was improper argument to the jury in several respects. It would serve no good purpose to set forth the argument. Certainly not all of that objected to could be considered irrelevant or even improper. Perhaps the most that could be said against some of it would be that it was slightly intemperate. It seems significant plaintiff made no objection to the argument at the time it was made and the trial court did not

intervene in any way. Plaintiff first raised objection upon motion for new trial.

In *Roda v. Williams,* 195 Kan. 507, 407 P. 2d 471, in discussing improper argument, this court said:

"From the cold printed record it is difficult, if not impossible, to assess the impact of improper jury argument in every case. This is best left to the trial judge in the first instance who is in position to take immediate corrective action. Moreover, in this case no objection was made to the argument until upon motion for new trial.

"The trial court should, of course, of its own motion without waiting for objection from opposing counsel protect litigants from misconduct of counsel, particularly where the misconduct is so prejudicial that it must influence the jury. If the court fails to act of its own motion, then an objection should be made and a ruling thereon had in order to take advantage of the error in such improper conduct (88 C. J. S., Trial, § 196b). Such misconduct may be waived by failure to object (88 C. J. S., Trial, § 196e). This rule has been applied by this court. (*Martin v. National Mutual Casualty Co.,* 169 Kan. 110, 217 P. 2d 1055; *State v. Bonomo,* 173 Kan. 675, 250 P. 2d 833; *State v. Latham & York,* 190 Kan. 411, 375 P. 2d 788.)" (p. 515.)

Considering the record with the foregoing in mind, we cannot say prejudicial error was shown or resulted in the argument.

This disposes of contentions raised upon the principal appeal. Defendants present two matters upon cross-appeal.

The trial court assessed three-fourths of the court costs against plaintiff and one-fourth against defendants and further ordered that the costs of all discovery depositions should be paid by the party taking them. Defendants took five depositions, two of which were offered in evidence by them but were not received. The five depositions, taken at a cost of $592.46, are described as discovery depositions. Defendants seek review of the ruling assessing the the cost of these depositions against them.

The question of assessing costs of discovery depositions, not used as evidence, is novel with us. Rulings of courts of other jurisdictions on the subject vary considerably (see anno. 76 A. L. R. 2d 953), the lack of uniformity being due in part to differences in statutes and in part to judicial policy determinations.

K. S. A. 60-2002 (*a*), dealing generally with taxation of costs, provides:

"*As of course.* Unless otherwise provided by statute, or by order of the judge, the costs shall be allowed to the party in which favor judgment is rendered."

Patently, the above vests in the trial judge discretionary authority in taxation of costs in a civil action. Hence, except where otherwise provided by statute, allowance of costs to the prevailing party is within the sound discretion of the court.

K. S. A. 60-2003, specifically identifying certain items which may be allowed as costs, provides in pertinent part:

"Items which may be included in the taxation of costs are:

. . . . . . . . . . . . . . .

"(5) Reporter's or stenographic charges for the taking of depositions used as evidence."

Noteworthy is the fact the legislature in the foregoing delineation has, as a matter of policy, chosen to specify that only charges for the taking of depositions *used as evidence* may be recovered as costs, omitting any mention of charges for depositions taken for discovery purposes in preparation for trial.

Costs of preparation for trial are not ordinarily recoverable as costs. Discovery depositions by their very nature fall within the realm of trial preparation. We think the distinction implicit in 60-2003 evinces policy which is reasonable and fair. We therefore hold that charges for discovery depositions, not used as evidence, are ordinarily not taxable as costs. Generally speaking, a trial court is vested with a large measure of discretion in the administration of our discovery procedures, and we do not mean to say extraordinary circumstances might not exist wherein a trial court would be justified, in the exercise of sound discretion, in allowing or apportioning the charges of discovery depositions. The burden of proving any such rare exception would, of course, rest upon the party claiming the costs.

No such situation exists in the case at bar. Defendants suggest the fact two of the depositions were offered in evidence should make the charges for them allowable as costs. To make a mere offer controlling on the question would open the door to possible abuse, that is, permit discovery depositions to be offered in evidence under the guise of impeachment so as to furnish a basis for assessment of costs. The record here indicates the trial judge had that very thing in mind in rejecting the offer, and the rejection is not shown to be erroneous. The trial court did not err respecting costs of the discovery depositions.

Defendants contend the trial court erred in failing to instruct the jury, as requested by them, that the intersecting roads were of equal

importance and that the blacktopped county road did not have superior status to the township road. They argue such an instruction was necessary in view of plaintiff's testimony that she though the county road had precedence. We do not agree. The trial court did give the jury proper cautionary instruction as to the court's function in stating the law of the case to the jury and the jury's duty to follow that law (PIK 201, 208). The trial court then gave full and correct instructions upon the law defining the rights and duties of the parties at the intersection in question. We decline the premise that an instruction such as requested by defendants was necessary in order to prevent the jury from taking the law of the case from the plaintiff's testimony instead of from the trial judge's instructions.

The judgment is affirmed.

APPROVED BY THE COURT.