No. 54,656

JOHN BROWN AND BARBARA BROWN AND K & L TANK TRUCK SERVICE, INC., *Appellants,* v. HERMAN LANG AND ELIZABETH LANG, Husband and wife, *Appellees.*

(675 P.2d 842)

Opinion filed January 13, 1984.

*Lelyn J. Braun,* of Lelyn J. Braun, Chartered, of Garden City, argued the cause and was on the brief for appellants.

*Casey R. Law,* of Turner and Boisseau, Chartered, of Great Bend, argued the cause and *Hal Meltzer,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: Plaintiffs, John Brown, Barbara Brown, and K & L Tank Truck Service, Inc., (plaintiffs), appeal from a judgment

rendered in a trial to the court for breach of a written contract. While numerous issues were presented to and decided by the trial court, only two are on appeal: (1) Whether the trial court erred in its construction of the terms of the contract, and (2) whether the trial court erred in its determination of the amount of damages awarded plaintiffs. We find no error in the trial court's determination of either issue and affirm the judgment.

From 1966 to 1977, defendants Herman and Elizabeth Lang owned K & L Tank Truck Service (K & L), which provided fluid hauling services for the oil industry in and around Garden City. Plaintiffs John and Barbara Brown were friends of the defendants.

Along with Leroy Valentine, defendants Lang also owned Vala Construction and Supplies, Inc. (Vala), a roustabout construction company which sold oil equipment and provided contracting services to area drillers. Vala was incorporated in 1974 and its capital stock was owned 50% by Valentine and 50% by Herman Lang. The articles of incorporation provided each man with a right of first refusal to purchase the other's stock. If either decided to sell his stock he was required to offer it to the other before selling to an outside party. Lang owned the land occupied by Vala and K & L, which shared offices and used the same yard facilities. Vala paid K & L $750.00 per month for rent and for some bookkeeping services.

In 1976, defendants offered to sell to the Browns the entire K & L operation and their 50% of Vala. On March 24, 1977, the parties signed a contract. The contract conveyed equipment and vehicles used to haul crude oil, fresh water and salt water, other related equipment, a lease for a salt water disposal well, and all of the physical assets of K & L as itemized in the agreement, along with 50% of the capital stock in Vala. The contract ascribed values to each item, placing the value of the Vala stock at $32,500.00. The total purchase price was $300,000.00. After executing this contract, Lang delivered to the designated escrow agent the Vala capital stock. The Browns assumed operation of K & L, which they incorporated, in July, 1977, and began making the specified monthly payments of $2,492.90, which were accepted by the Langs. The Langs ceased participation in the management of K & L and Vala.

At this point a dispute arose between Herman Lang and Leroy

Valentine over the transfer of Langs' stock to the Browns. Valentine thereafter filed suit against the Langs, the Browns, and the escrow agent, seeking to void the sale and transfer of Langs' Vala stock to the Browns because Valentine had neither waived his right of first option to purchase the stock nor acquiesced in the sale. (*Valentine v. Lang, et al*, No. 77-C-250 [D.C. Finney County, April 16, 1979].) The trial court agreed with Valentine and voided the transfer of Vala stock. The escrow agent returned the stock certificates to defendant Herman Lang. Vala later went into receivership and was dissolved by court order in December, 1979.

On May 31, 1979, plaintiffs filed this suit against the defendants seeking damages for breach of contract. Plaintiffs also sought a judgment construing the purchase price and payment terms defined in the contract which were patently inconsistent.

One of the pretrial issues raised by the parties was the admissibility of parol evidence concerning events and circumstances between the parties leading to execution of the contract in question. Plaintiffs asserted that the contract was clear and unambiguous, requiring no parol evidence for interpretation. Defendants asserted a number of alleged ambiguities which appeared on the face of the agreement, warranting consideration of parol evidence to clarify the parties' intentions. Paragraphs 6 and 7 of the contract state:

"6. Second party agrees to pay to the first party, and the first party agrees to accept as full payment for the sale and transfer of said permit, and for the purchase price of all personal property and the business hereinbefore described as well as the 50% of the capital stock of Vala Construction and Supplies, Inc., the sum of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) which shall be paid in the following manner:

The sum of FIVE THOUSAND DOLLARS ($5,000.00), cash, as earnest money, simultaneously with the execution of this agreement;

The sum of FORTY-FIVE THOUSAND DOLLARS ($45,000.00) on or before the 1st day of July, 1977;

"7. The deferred balance of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), shall be paid in ONE HUNDRED TWENTY (120) equal monthly installments, with interest included at the rate of 7 ½% per annum, in the monthly amount of TWENTY-FOUR HUNDRED NINETY-TWO DOLLARS and 90/100 ($2,492.90) and with the first payment thereof being due and payable on the 1st day of September, 1977, with a like installment on the 1st day of each month thereafter until fully paid. The party of the second part shall have full prepayment privileges of any part of the unpaid deferred balance at any prior time without penalty."

The first alleged ambiguity arises due to the conflict between the stated principal, interest, and installment terms, and the specified monthly payment amount. Monthly payments of $2,492.90 for a term of 120 months would amount to $299,148.00, yielding an effective annual interest rate of only 3.67%, contrary to the rate of 7.5% specified by the contract. By contrast, interest of 7.5% per annum on the deferred balance of $250,000.00 would require either 120 monthly payments of $2,967.54, or payments of $2,492.90 for 158.19 months. Plaintiffs contended that the contract when read from the four corners of the instrument was clear and unambiguous, that the stated monthly payment of $2,492.90 should control and that traditional rules of construction of ambiguous documents did not apply.

The trial court agreed with plaintiffs that the contract needed no parol evidence for interpretation stating:

"[T]he contract, when considered from the four corners of the instrument, is sufficiently clear and unambiguous as to indicate the intent of the parties . . . . The alleged ambiguities pointed out in the brief of the Defendants are not sufficient, taken in light of the contract read as a whole, to necessitate the use of parol evidence to determine the agreement of the parties."

After this decision, defendants then moved the court to determine as a matter of law its interpretation of the monetary provisions of the contract. The court found:

"It is the finding of this Court that the *Contract of Sale and Assignment,* between the parties, executed March 24, 1977, provides for a purchase price of Three hundred thousand dollars ($300,000.00) with the sum of Five thousand dollars ($5,000.00) paid as Earnest Money at the time of the execution of the agreement, the further sum of Forty-five Thousand dollars ($45,000.00) to be paid on or before the first day of July, 1977, and the balance of the purchase price, that being the sum of Two hundred fifty thousand dollars ($250,000.00), to be paid in 120 equal monthly installments, with interest on the balance of the purchase price paid at the rate of 7-½% per annum."

After full trial on the issues in this case, including a number of claims which are not contested on appeal, the trial court made twenty-one findings of fact, two of which are relevant to this appeal:

"4. Plaintiffs are entitled to a reduction in the total purchase price of the contract dated March 24, 1977, in the sum of $32,500.00 plus interest, that being the amount agreed to as Defendant's share of Vala Construction and Supplies, Inc., which Defendants due to prior Court order are unable to deliver to Plaintiffs.

"5. The evidence presented does not support damages on behalf of Plaintiffs

for the Defendants' inability to transfer their share of Vala Construction, other than the price agreed on of $32,500.00. The evidence in this case indicated that Vala Construction was a month-to-month tenant of K & L Tank Truck Service, Inc., and that Plaintiffs have suffered no damage from their failure to obtain 50% of Vala Construction other than the agreed value of 50% of Vala Construction. The action of Defendants in their failure to convey 50% of Vala Construction was due to prior litigation and does not indicate fraud on behalf of the Defendants in their actions concerning Vala Construction."

Plaintiffs assert error in the court's interpretation of the monetary provisions of the contract and in its allowance of damages for the breach by defendants in being unable to deliver 50% of the capital stock of Vala. At the outset the defendants assert a jurisdictional challenge to the first point. The trial court, in ruling on pretrial motions, made its determination that the contract was not ambiguous on October 30, 1981, and entered its findings on the monetary aspects of the contract in a journal entry dated January 13, 1982. The trial was held January 25, 1982, and the memorandum decision of the court was not filed until June 11, 1982. Plaintiffs appealed from that decision. Defendants argue that this court has no jurisdiction because the notice of appeal did not specify the order of January 13, 1982. The argument is totally without merit. The court's October and January orders were merely pretrial rulings governing further proceedings and were specifically referred to in the June 11, 1982, memorandum decision. This court has jurisdiction.

Turning to plaintiffs' first issue on appeal, they now assert, contrary to their position at trial, that the contract was ambiguous and that certain rules of construction should have been applied. They contend the monthly payment in the contract should control over the other provisions and reach this conclusion by asserting certain rules of construction. We agree with the trial court's determination and see nothing to be gained here by a discussion of certain well known rules of construction which are only applied when the contract is found to be ambiguous. *First Nat'l Bank of Olathe v. Clark*, 226 Kan. 619, 602 P.2d 1299 (1979).

A careful reading of the contract clearly supports the court's initial findings of no ambiguity when the contract is considered from its four corners and in its entirety. When the intent of the parties to a contract is clearly ascertainable by construing the

document from its four corners it is not considered ambiguous; although some terms may be conflicting, extrinsic evidence is inadmissible and rules of construction applicable to ambiguous contracts do not apply. A mere mathematical or typographical error in a contract which does not create such an inconsistency that the overall intent of the parties cannot be determined from the four corners of the instrument does not result in an ambiguous contract. It merely creates an inconsistency subject to interpretation by the court considering the contract as a whole. The contract itself expresses the parties' agreement to the $250,000 balance with a payment term of 120 months, and an annual interest rate of 7.5%. The only variance with these terms is the monthly payment amount, erroneously stated in the contract to be $2,492.90. Proper computation of the principal, interest and time terms previously set forth requires 120 monthly payments of $2,967.54, a difference of $474.64 per month. Plaintiffs contend the monthly payment terms control the remaining terms. However, such a construction focuses on an isolated provision to the detriment of the contract as a whole. In *Clark* the court discussed the rules of construction as applied to written contracts and said:

" 'In placing a construction on a written instrument reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all the pertinent provisions and never be determined by critical analysis of a single or isolated provision. [Citations omitted.]   . . .

" 'Prior to a resort to extrinsic evidence, the instrument is to be interpreted from its "four corners." That is to say, all the language used anywhere in the instrument should be taken into consideration and construed in harmony with other portions of the instrument. [Citations omitted.]

" 'The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings. [Citations omitted.]' "
226 Kan. at 624.

Within the four corners of the contract before us, it is clear the parties agreed on the specific terms defining the installment portion of the contract. There being no ambiguity in this regard, there was no need to resort to parol evidence or rules of construction in order to construe the contract. The error in this instance was simply a mathematical or typographical error in the amount of the monthly payment which was not discovered by

either party until long after the contract was executed and acted upon.

The remedy in cases of mutually mistaken computation is not to bind the parties to the erroneous figure, whereby one party inevitably profits at the expense of the other. In an analogous context, that of erroneously adding the prices of a number of items, Professor Corbin has stated the proper approach:

"The mistake in computation may be a truly 'mutual' mistake, made by both parties alike. Such a case should cause no difficulty. If the mistake was such as to cause the parties to assent to the terms of agreement, there being no assent to any other terms, the bargain should be set aside, with a proper restitutionary remedy at the suit of the party harmed by the mistake. If, however, the parties had in fact agreed upon the price of each of several items, thereafter making an error of addition, there is a valid contract in accordance with the correct addition of the agreed items. If the transaction is executed and the buyer has paid too much, he can recover the excess payment. No preliminary decree of reformation is necessary. If the transaction is still executory, the true agreement is enforceable as to both parties. If the erroneous agreement is in writing, reformation is proper but not necessary." 3 Corbin on Contracts § 609 (1960).

We hold that under the facts of this case, where the monetary terms of the contract are clear and unambiguous as to principal amount, interest rate and number of payments, those terms will control an interpretation of the contract even though the monthly payments do not coincide with the other terms. The trial court was correct in its determination that the more specific terms of principal, interest and time controlled over the erroneous calculation of the monthly payment.

Plaintiffs' next contention is that the trial court erred in its allowance of damages for the defendants' breach of the contract in being unable to deliver the Vala stock. The trial court found there was insufficient evidence to support plaintiffs' claims to damages in excess of the $32,500.00 value of the stock. The negative finding by the trial court indicates the plaintiffs simply failed to carry their burden of proof of any additional damages. Plaintiffs sought damages for lost rent to be paid by Vala to K & L, an amount equal to the salary paid Valentine and lost profits or value of the stock in an amount of $236,800 in addition to the $32,500 agreed value of the Vala stock.

In *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, 548 P.2d 719 (1976), we held:

"The effect of a negative finding by a trial court is that the party upon whom

the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed." Syl. ¶ 5.

A careful review of the record discloses no undisputed evidence of the damages alleged by plaintiffs which was arbitrarily or capriciously ignored by the trial court. To the contrary the judgment is adequately supported by the evidence.

Finally, although not specified as an issue on appeal, we note that plaintiffs in the final paragraph of their brief assert the court committed error in assessing costs to the plaintiffs. The allowance of costs lies within the sound discretion of the trial court. *Wood v. Gautier*, 201 Kan. 74, Syl. ¶ 2, 439 P.2d 73 (1968); K.S.A. 60-2002(*a*). We find no abuse of that discretion.

The judgment is affirmed.