(198 P.3d 152)
No. 98,627

MICHAEL FALKNER, *et al.*, *Appellees*, v. COLONY WOODS HOMES
ASSOCIATION, *Appellant*.

Opinion filed July 3, 2008.

*Jeffrey A. Kincaid*, of Rees & Kincaid, of Lenexa, for appellant.

*Eric G. Kraft*, of Duggan, Shadwick, Doerr & Kurlbaum, PC, of Overland Park,
for appellees.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Colony Woods Homes Association (CWHA) appeals the trial court's interpretation of the Declaration of Restrictions applicable to homeowners living in the Colony Woods subdivision. On appeal, CWHA contends that the trial court erred in its interpretation of the homeowners' restrictions. We agree. Nevertheless, because of its conduct, we determine that CWHA waived compliance with the homeowners' restrictions. Accordingly, we affirm.

Michael and Nan Falkner own a home located in Colony Woods. CWHA operates Colony Woods under a Declaration of Restrictions filed in 1975 with the Johnson County Register of Deeds. CWHA is responsible for enforcing compliance with the Declaration of Restrictions. Included are two provisions: one titled "Right to Approve Plans" (Section 7) and the other titled "Required Building Materials" (Section 9). Section 7 contains the following language:

"No building shall be erected, placed or altered on any building plot in this subdivision until the building plans, specifications and plot plan showing the location of such building have been approved in writing as to conformity and harmony of external design with existing structures in the subdivision . . . .

"Upon any such request for approval the party requesting such approval shall submit simultaneously with said request the following documentation:

. . . .

"(d) A list of all exterior materials to be used which will include roof, masonry, siding and windows . . . .

. . . .

" . . . In the event said Committee, or its designated representative, fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, or in any event, if no suit to enjoin the erection of said building or the making of such alterations has been commenced prior to the completion thereof, such approval will not be required and this covenant will be deemed to have been fully complied with."

Section 9 states: "Roofs shall be covered with wood shingles, wood shakes, slate or tile. Any building products which may come into general usage for dwelling construction in this area after the date of these restrictions shall be acceptable if approved in writing by the Architectural Control Committee." The Architectural Control Committee (ACC) is established in Section 7 as a 5 member

group of homeowners which accepts requests for new buildings and alterations and approves the requests under the Declaration of Restrictions.

On December 20, 1998, the ACC disseminated a notice (Notice) to the homeowners of Colony Woods informing them that the ACC "will allow the GAF Grand Sequoia 40yr Weathered Wood color and Celotex Presidential shake 40yr Autumn Blend color as alternative material choices to the current Colony Woods Homes Associations Declaration of Restrictions, pursuant to the 'other materials which may come into general usage in the area' clause." The Notice continued to explain that the ACC had developed a form for every homeowner to use if they were to "install [a] new roof or re-roof or alter their existing roofing materials." The new approval process outlined in the Notice required the homeowner to fill out and sign the form, include a material data sheet and bid proposal, include a copy of the City of Lenexa's Building Roofing Permit, and "await a written and signed response from [an] ACC member prior to ordering material or any work to begin." The Notice specified that the ACC would then have 30 days to respond in writing to any request received. The letter concluded by providing a 2-week period for "comments, objections, or suggestions to the new rule on alternative roofing."

On or about March 15, 2006, the Falkners completed the replacement of their wood roof with a laminate asphalt shingle roof. CWHA knew, on March 3, 2006, that the Falkners were using materials that did not comply with the Declaration of Restrictions. The Falkners took no action to obtain approval by the ACC before the installation of the new roof. Moreover, on the final day of construction, the Falkners spoke with a member of the ACC who told them that the roofing materials were not an approved product. The ACC member told the Falkners they needed to submit a request form for approval of alternative roofing materials. In a letter dated March 22, 2006, the chairman of the ACC wrote the Falkners telling them that the roofing material they were using had not been approved and that the ACC "will have to deny the use of this material, unless it can be proved that this [was] an approved roofing material." Further, the letter included a request form for exterior

roofing material change. The letter requested that the Falkners fill out an approval form and return it to the ACC by April 18, 2006.

The Falkners returned a completed approval form, dated March 23, 2006, and included the materials used in the re-roofing of their home. Upon receiving no response, the Falkners' attorney wrote the chairman of the ACC on June 8, 2006, to determine whether the request had been approved. CWHA's attorney responded with a letter on June 16, 2006, stating that the Falkners' roofing materials had been disapproved before the submission of the approval request form and that the CWHA would take further legal action.

The Falkners brought an action for declaratory judgment. They requested that the trial court interpret the Declaration of Restrictions. CWHA answered and counterclaimed for an injunction and damages. CWHA moved for summary judgment and the court later held a hearing. At the hearing, the trial court determined that it was uncontroverted that the Falkners did not comply with the original deed restrictions or the procedures outlined in the Notice to obtain approval for their roof. The trial court further determined that it was uncontroverted that CWHA took no action to enjoin the construction of the new roof before completion. The court ultimately found that CWHA had failed to take action to enjoin the roof replacement within the requirements of Section 7 of the Declaration of Restrictions which states: " '[I]f no suit to enjoin the erection of said building or the making of such alterations has been commenced prior to the completion thereof, such approval will not be required and this covenant will be deemed to have been fully complied with.' " The trial court denied CWHA's motion for summary judgment.

The court entered judgment in favor of the Falkners and stated that they were not required to remove their roofing materials. The court further entered judgment in favor of the Falkners on CWHA's counterclaims.

*Did the Trial Court Properly Interpret the Declaration of Restrictions?*

CWHA argues that the trial court erred in its interpretation of the Declaration of Restrictions because the court used rules of

contract construction incorrectly and ignored the intent of the drafter. Further, CWHA argues that it had no duty to respond to the Falkners' request for approval of their roof. Finally, CWHA argues that the trial court's interpretation of the Declaration of Restrictions generates an absurdity because it requires CWHA to self-police the subdivision. On the other hand, the Falkners argue that the trial court's interpretation of the Declaration of Restrictions was correct. In the alternative, the Falkners pleaded affirmative defenses of waiver, estoppel, and laches, and they argue these defenses on appeal.

*Standard of Review*

This court employs a de novo standard of review for contract interpretation. The interpretation and legal effect of written instruments are matters of law and an appellate court exercises unlimited review. *McGinley v. Bank of America N.A.*, 279 Kan. 426, 431, 109 P.3d 1146 (2005). Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. *City of Lenexa v. C.L. Fairley Constr. Co.*, 245 Kan. 316, 319, 777 P.2d 851 (1989). Further, this court uses the same rules it applies to interpret contracts to interpret restrictive covenants in deeds. *South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, 750-51, 549 P.2d 1035 (1976).

To interpret the Declaration of Restrictions, this court must first ascertain the intent of the parties. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction. *Anderson v. Dillard's Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). An ambiguity in a contract does not appear until two or more meanings can be construed from the contract provisions. *Gore v. Beren*, 254 Kan. 418, 426-27, 867 P.2d 330 (1994). Furthermore, restrictive covenants contained in deeds should be construed according to the intent and purpose of the grantors collected from the entire document. *South Shore Homes*, 219 Kan. at 751. An interpretation should not be based on isolating one particular clause or sentence of a contract, but rather by considering the

contract as a whole. *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10, 13 P.3d 351 (2000).

*Interpretation of Sections 7, 9, and 22*

CWHA argues that the trial court erred by using rules of contract construction and finding both Sections 7 and 9 applied to the Falkners' reroofing project rather than Sections 9 and 22. CWHA also argues, for the first time on appeal, that Section 22 of the Declaration of Restrictions should apply to this case. Section 22 states:

"[T]he Developer, its successors and assigns, and also the owner or owners of any of the lots hereby restricted shall have the right to sue for and obtain an injunction, prohibitive or mandatory, to prevent the breach of, or to enforce the observance of, the restrictions above set forth, in addition to ordinary legal actions for damages, and failure of the Developer, its successors or assigns, or any owner or owners of any lot or lots hereby restricted to enforce any of the restrictions herein set forth at the time of its violation shall, in no event be deemed to be a waiver of the right to do so thereafter."

Although CWHA did not mention Section 22 in its answer and counterclaim or in its motion for summary judgment, CWHA now states Section 22 applies to the Falkners' reroofing project and allows CWHA unlimited time to pursue legal action against the Falkners. Kansas law is clear that issues not raised before a trial court cannot be raised on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). Nevertheless, because we make our own interpretation of contracts, this court will consider Section 22's application in this case. See *City of Lenexa*, 245 Kan. at 319.

At the hearing on CWHA's motion for summary judgment, the trial court stated that the restrictions in the declaration must be read together. The judge stated: "They don't need to do any rules of construction if we can see that plain language read in its normal sense, in a rational sense within the four corners of the file documents. We don't have to do any rules of construction if we don't see any ambiguity." The court went on to make the following findings: (1) that Section 9 of the Declaration of Restrictions gives proper notice to a homeowner in Colony Woods that the ACC has authority to determine which alterations are allowed in the subdivision, (2) that Section 7 of the Declaration of Restrictions es-

tablishes the ACC and explains its authority, (3) that the Notice sets out specific acceptable alternative materials for roofs and also provides a form for homeowners to request approval under Section 9 for any roofing construction. As a result, the court found it "uncontroverted that the applicants need to follow those procedures, and these plaintiffs [the Falkners] did not comply with the . . . timely making of an application to the architectural control committee."

Nevertheless, the trial court also found it uncontroverted that CWHA took no action to enjoin the Falkners' construction before the completion of the project. After close examination of Section 7, the trial court determined that the Declaration of Restrictions required the ACC to file suit to enjoin the construction before completion in order to enforce the restriction. The trial court determined that the clause was reasonable considering the expense spent on reroofing projects and held that the ACC had failed to comply with the provision. Finally, the trial court noted that the Declaration of Restrictions contained a procedure for amending the document, if the CWHA found it necessary.

A quick review of Section 9 is necessary. Section 9 outlines the required building materials for homes in Colony Woods. In addition to specifying the requisite materials for the exterior walls, windows, and doors, this section outlines the following requirement for roofs: "Roofs shall be covered with wood shingles, wood shakes, slate or tile." Section 9 further states that any other building products will be deemed acceptable after approval in writing by the ACC, although it specifies no procedure for a homeowner to obtain approval. At the hearing, CWHA argued that Section 9, not Section 7, should apply to this case. On appeal, CWHA makes the same argument.

CWHA's argument ignores the fact that Section 7 also contains language pertaining to this case. Section 7 requires approval by the ACC before any building is "erected, placed or altered." The trial court was correct in determining that replacing a roof is altering a building under Section 7. Section 7 also specifies the ACC's role, including naming the members and providing for the procedure to dismiss any member. Further, Section 7 outlines the specific pro-

cedure to obtain approval for the erection, placement, or alteration of a building. Finally, CWHA's approval form used by homeowners to request an exterior roofing material change states: "I have read and will comply with all of the applicable Colony Woods Homes Association's Declarations of Restrictions particularly the Section VII and Section IX, with regards to the plan approval process and required building materials." Clearly, Section 7 would be applicable to a homeowner's reroofing project.

Despite CWHA's desire to have Sections 7 and 9 read distinctly and separately from each other, it is necessary to construe all provisions of a contract together and in harmony with each other to determine the parties' intent. *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 671, 876 P.2d 1362 (1994). "Where the language of the contract is clear and can be carried out as written, there is no room for construction or modification of the terms. [Citation omitted.]" 255 Kan. at 671. The two provisions are not contrary to each other and can be read together. While Section 9 outlines the approved building materials when the Declaration of Restrictions was drafted and allows the ACC power to approve additional materials, Section 7 furnishes the specific procedure by which a homeowner can obtain approval from the ACC for any additional buildings or alterations of existing buildings. Further, Section 7 explains the purpose of the ACC, which, as CWHA discussed at the hearing, must necessarily be pertinent to this case if the ACC has any authority over the Falkners' roofing project. These provisions are not contrary to each other and no alternative meaning can be extrapolated from the provisions. Thus, there is no ambiguity and no need to employ contractual rules of construction.

Further, in considering the Declaration of Restrictions as an entire document, it is clear that Section 22 is a general clause regarding the ability of CWHA and individual homeowners to enforce the Declaration of Restrictions while Section 7 applies specifically to situations where homes are "erected, placed or altered." Thus, if CWHA or a homeowner wanted to file suit to require another homeowner to sod their yard under Section 10, or to prevent another homeowner from installing an above-ground swimming pool under Section 13, or even to restrict another homeowner

from conducting automotive repair on their land under Section 18, they would do so by filing suit under Section 22 because none of the provisions contain a more specific clause regarding the approval procedure and legal process. Like Section 9, Section 22 can be read in harmony with the more specific procedures outlined in Section 7.

This interpretation of Section 22 is consistent with this court's decision in *Colony Woods Homes Association, Inc. v. Pevehouse,* No. 77,467, unpublished opinion filed May 22, 1998, which CWHA cites in support of its argument on appeal. In *Pevehouse,* CWHA appealed a trial court's denial of an injunction relating to a shed and treehouse located on a homeowner's land. This court held that Sections 7 and 22 of the Declaration of Restrictions were in harmony with each other. For example, Section 7 applied to the approval of plans for residential structures while Section 22 applied to the right to enforce the restrictions regarding Sections 10 through 20 and the "various limitation or prohibition provisions concerning the use of property." Slip op. at 7.

Finally, even if this court were to assume some error or uncertainty regarding Sections 7, 9, and 22, any such error would not create an inconsistency by which the overall intent cannot be determined from the documents. In such a situation, this court would not consider the document to be ambiguous. "When the intent of the parties to a contract is clearly ascertainable by construing the document from its four corners it is not considered ambiguous; although some terms may be conflicting, extrinsic evidence is inadmissible and rules of construction applicable to ambiguous contracts do not apply." *Brown v. Lang,* 234 Kan. 610, 614-15, 675 P.2d 842 (1984). Again, this court may not consider the Declaration of Restrictions ambiguous unless two or more meanings can be construed from its terms. See *Beren,* 254 Kan. at 426-27. That is not the case here, and any conflict between Sections 7, 9, and 22 can be clarified by construing the Declaration of Restrictions as a whole.

CWHA challenges the trial court's holding that "[i]t would appear that [CWHA has] no right as a matter of law to enforce this restriction as it's set out in section 7 of the declarations, because

they didn't timely file a suit before the completion." Although CWHA incorrectly argues that Section 7 is inapplicable to this case, CWHA is correct when it contends that the trial court's holding is incorrect and inconsistent to what we said in *Pevehouse*. In *Pevehouse*, this court considered Section 7 and stated the following:

"Even if the trial court had been correct in its assumption that section VII applied, the trial court erred in its interpretation of the language of this section. Section VII requires Pevehouse to submit building plans, specifications, and a plot plan to the Committee and to obtain its approval before building any structure. The Committee would have 30 days to approve or disapprove the structure. Pevehouse cannot take advantage of the saving clause of this section without first complying with the requirement that he submit his plans to the Committee. Because Pevehouse failed to meet this requirement, we hold that Colony Woods timely filed this action." Slip op. at 8.

Although the previously mentioned statement in *Pevehouse* is dicta, the statement is helpful in understanding Section 7's interrelationship with Section 22. Here, the trial court correctly determined that the Falkners had failed to follow the proper procedures to obtain approval of their roofing material. According to *Pevehouse*, the Falkners' failure to seek initial approval from the ACC to re-roof their home would have precluded them from taking advantage of the saving clause under Section 7. We agree with that interpretation. Moreover, Section 22 would have controlled this situation because, as CWHA argues, the Falkners had failed to seek prior approval of their building plans under Section 7. As a result, the trial court's holding on this point is incorrect.

Nevertheless, if a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision. The reason given by the trial court for its ruling is immaterial if the result is correct. *Hall v. Kansas Farm Bureau,* 274 Kan. 263, 273, 50 P.3d 495 (2002).

*CWHA's Duty to Respond to the Falkners' Request for Approval*

CWHA argues that it had no duty to respond to the Falkners' request for approval of their reroofing project. CWHA argues that a response would have been useless because the Falkners had been notified that the materials used to roof their home had been dis-

approved. Nevertheless, immediately upon receiving the ACC's letter dated March 22, the Falkners complied with the approval procedure and returned all necessary paperwork. Although the ACC's letter stated that "[t]his roofing material is not approved as far [as] we can tell," the letter stated that "[w]e need a request formed [*sic*] filled out correctly with what materials were used and the color that was used." The letter requested the form be returned by April 18, 2006.

Unlike the homeowner in *Pevehouse*, the Falkners complied with the approval request procedure and returned all necessary paperwork to the ACC. Moreover, after waiting nearly 3 months for a response, the Falkners had their attorney inquire as to whether their materials had been approved. CWHA's explanation, however, for its lack of response to the Falkners' approval request form runs counter to reason. If the materials had already been disapproved before the Falkners had submitted their approval request form, why ask them to submit a form by April 18, 2006? Assuming for the sake of argument that ACC had disapproved the materials used before the Falkners had submitted their approval request form, this does not end our analysis. The Falkners, for example, were also seeking to be excused from literal compliance with the previously mentioned approved roofing materials listed in the Notice and the ACC's letter of March 22, 2006.

Section 9 specifically states: "Any building products which may come into general usage for dwelling construction in this area after the date of these restrictions shall be acceptable if approved in writing by the Architectural Control Committee." Clearly, the ACC had the authority to excuse the Falkners from literal compliance with the materials listed in the Notice and its letter of March 22, 2006, and find acceptable the roofing materials used by the Falkners. Moreover, if the ACC did not have the authority to excuse the Falkners' noncompliance with the approved roofing materials, why would it ask them to submit an approval request form when, as CWHA contends, the ACC had disapproved the roofing materials used by the Falkners?

One of the arguments that the Falkners make in support of the trial court's decision is waiver. A waiver is the intentional relin-

quishment of a known right, and intention may be inferred from conduct. *Iola State Bank v. Biggs*, 233 Kan. 450, 458-59, 662 P.2d 563 (1983); see also *Postal Savings & Loan Ass'n v. Freel*, 10 Kan. App. 2d 286, 287, 698 P.2d 382 (1984) (An intent to waive may be inferred from conduct.).

In defining the word "waiver," our Supreme Court stated that it was "an intentional renunciation of a claim or right and exists only where there has been some absolute action or inaction inconsistent with that claim or right." *Proctor Trust Co. v. Neihart*, 130 Kan. 698, 705, 288 Pac. 574 (1930). Moreover, justified and reasonable reliance upon an implied waiver will also excuse nonfulfillment of a condition. See *Foundation Property Investments v. CTP*, 286 Kan. 597, 609, 186 P.3d 766 (2008) ("Waiver of a contract provision may be implied from the parties' conduct."). Although our research has revealed no case exactly on point with the issue in this case, we can draw guidance from the decision in *Lee v. Casualty Co. of America*, 90 Conn. 202, 96 A. 952 (1916). *Lee* is instructive because it shows that a party by its conduct may waive a condition as to notice even after the condition to its duty to perform has been breached.

In *Lee*, the insured's casualty insurance policy contained a condition precedent to the insurer's duty to defend: that the insured promptly notify the insurer of a claim covered by the policy and, if sued, promptly deliver the summons and legal papers to the insurer. The insured failed to do either act promptly, but did eventually comply with the condition precedent. The Connecticut Supreme Court found the insurer waived the insured's delay for the following reasons: (1) the insurer received and accepted tardy notice of the accident claim; (2) the insurer, for 2 months, negotiated unsuccessfully with the injured claimant for a settlement; (3) and the insurer asked the insured for further information, which the insured furnished.

Similarly, the chairman of the ACC wrote the Falkners, in a letter dated March 22, 2006, inviting them to submit information on the roofing material that they had used. Moreover, the ACC received and accepted the tardy approval request form. The letter stated that the ACC "will have to deny the use of this material,

unless it can be proved that this [is] an approved roofing material." Although CWHA contends that it had denied the roofing materials used by the Falkners in its March 22, 2006, letter, its letter does not support this assertion. The letter specifically stated that the ACC "*will* have to deny the use of this material, unless it can be proved that this [was] an approved roofing material." (Emphasis added.) CWHA's use of the word "will" indicates future conduct on its part. In fact, the approval request form submitted by the Falkners contained the following information to be completed by the ACC:

---

Do not write below this line—for Architectural Committee use only

ACC Received Date: _____    ACC Approved: YES____ NO____

ACC Reviewed By: _____    Owner Notified: _____
ACC Reviewed Date: _____    Notification Date: _____
ACC Comments: _____

---

Based on the information to be completed by the ACC, it was apparent that the ACC would have reviewed the Falkners' approval request form, approved or disapproved their request, and notified them of its decision.

Although the Falkners took no action to obtain approval from the ACC before installation of the new roof, they sought approval for their new roof after the ACC had invited them to do so by April 18, 2006. Moreover, the ACC never told the Falkners that it would not accept or consider their approval request form. Finally, the fact that the March 22, 2006, letter requested that the Falkners submit an approval request form by a specific date implied that the ACC was willing to consider the approval request form even though it was tardy. Could the ACC withdraw and nullify its implied waiver of the condition to submit a timely approval request form? Yes, if promptly done, but not, as here, after the Falkners had relied on ACC's invitation to submit a tardy approval request form. The ACC

did not have to invite the Falkners to submit an approval request form. Yet, it did. When it received the Falkners' approval request form, it could have immediately rejected it, but it did not.

Once a homeowner has submitted an approval request form to the ACC to erect or to alter a building under Section 7, the ACC could disapprove the homeowner's request form in one of three ways: (1) by notifying the homeowner in writing of the adverse decision within 30 days after submission of the homeowner's approval request form; (2) by filing suit to enjoin the erection or the alteration of the building before completion of the work when either the homeowner has started work before obtaining written approval from the ACC or the ACC has failed to notify the homeowner in writing of the adverse decision within 30 days after submission of the homeowner's approval request form and the homeowner has started work; or (3) by doing both (1) and (2) previously mentioned. Because the ACC allowed the Falkners to submit an approval request form after they had completed their roofing project, the ACC was left with only alternative (1) to disapprove their roofing job.

CWHA correctly argues that Section 22 would be applicable to homeowners who have failed to seek prior approval to erect or to alter a building under Section 7. Indeed, because there was no uncertainty between the general provision of Section 22 and the specific provision of Section 7, the general provision of Section 22 would control situations where homeowners have failed to seek prior approval of their building plans under Section 7. Nevertheless, because of the unique facts of this case, Section 22 is inapplicable to this situation and Section 7 controls: because the ACC invited the Falkners to submit an approval request form after the roofing project had been completed and because the ACC accepted the Falkners' tardy approval request form.

In summary, Section 7 specifically requires a homeowner to seek prior approval from the ACC of all exterior materials to be used in erecting or altering a home. When the ACC invited and accepted the Falkners' approval request form, this was strong evidence, manifested by ACC's conduct, that it intended to waive compliance with the condition requiring a prior submission of an approval re-

quest form under Section 7. Moreover, the Falkners relied upon this intended waiver by submitting their approval request form well in advance of the April 18, 2006, time period for submitting such a request. As a result, the ACC was required to either approve or disapprove the Falkners' approval request form within 30 days after its submission. Yet, the ACC failed to comply within the 30-day notification period.

Because the ACC failed to disapprove the Falkners' approval request form within 30 days after its submission to the ACC and because no suit had been filed by CWHA to enjoin the roof project before its completion, we determine that the CWHA, by its conduct, waived approval of the roof under Section 7.

Affirmed.

MCANANY, J., dissenting: While I agree with my colleagues that the district court erred in its interpretation of the Declaration of Restrictions, I must depart from their conclusion that the trial court's judgment for the Falkners should be affirmed because the Colony Woods Homes Association (CWHA) waived its right to require compliance with Section 9 of the Declaration of Restrictions.

From its inception in 1975, CWHA required roofs of wood shingles, wood shakes, slate, or tile throughout the subdivision. Its Architectural Control Committee (ACC) was empowered to expand this list of roofing materials, as well as the list of other approved building materials, as new products came into general usage in home construction in the area. In 1998, the ACC expanded the list to include certain specified roofing materials manufactured by GAF and Celotex.

The Declaration of Restrictions for the subdivision also establishes a procedure in Section 7 for preconstruction approval for any new building or the alteration of an existing building. The majority finds, and I agree, that the 30-day time limit for ACC action found in Section 7 does not control since the Falkners did not comply with the preconstruction approval process.

About a week after the Falkners completed their reroofing project, the ACC Chairman wrote to them as follows:

"It has been brought to my attention that you have replaced the roof on your residence and we have no record of you requesting a new roof. This roofing material is not approved as far as we can tell.

"As you know we have request forms that must be filled out whenever you do any outside changes on your residence. This is especially true for new roofs. Since we have no record of what material (manufacturer, color, etc.) was put on the roof, the architectural control committee of the Colony Woods Homes Association will have to deny the use of this material, unless it can be proved that this [is] an approved roofing material (see enclosure)."

The letter goes on to identify the approved composite roofing materials and encloses a request form for the Falkners to complete.

The Falkners completed and submitted the form entitled "Request for Exterior Roofing Material Change" but received no response from the ACC until months later when they were informed through counsel that their roofing materials had been disapproved before submission of the approval request form. Based upon the delay in the response to the Falkners' application, the majority concludes that the ACC waived its right to limit roofing materials to those it had approved. I respectfully disagree.

The majority asks: "If the materials had already been disapproved before the Falkners had submitted their approval request form, why ask them to submit a form by April 18, 2006?" Slip op. at 16. May I suggest an answer. The Falkners' roofing material had already been disapproved. The Falkners used an unapproved product. The ACC had the right to expand the list of approved roofing materials as it had in 1998 when it recognized new products by GAF and Celotex. After the project was complete, the Falkners submitted a "Request for Exterior Roofing Material Change." Their purpose was to expand the list of approved roofing materials to include the materials used on their nonconforming composition roof. No doubt the ACC wanted a deadline for action by the Falkners since their roof violated existing subdivision restrictions. I do not read into this a requirement that the ACC must act promptly on a request to change construction standards by homeowners who have already finished their building project.

When it comes to changing the requirements for roofing materials in the subdivision, once the Falkners requested a change, the majority seems to say that they no longer bore the burden of jus-

tifying that change since the burden shifted to the ACC to take action to prevent the change from automatically occurring. This seems rather odd.

Contrary to the majority, I do not conclude that the ACC's delay in refusing to expand its list of approved roofing materials is an intentional renunciation of its right to set and maintain standards in the subdivision for roofing materials. The nonconforming roof was already on the Falkners' house. I do not consider the ACC's delay as being inconsistent with its right to set and maintain construction standards for the subdivision.

Further, I do not find *Lee v. Casualty Co. of America*, 90 Conn. 202, 96 A. 952 (1916), to be either applicable or persuasive. The majority cites it for the proposition that justified and reasonable reliance on an implied waiver excuses nonfulfillment of a condition. A 1916 Connecticut case dealing with a liability insurer's duty to defend claims against its insured simply does not apply. We have a whole body of law in Kansas dealing with a liability insurer's duty to defend, and these cases are built upon statutes, policy considerations, and special circumstances that are unique to insurance coverage disputes. Those considerations do not apply here.

Further, the Falkners did not rely on an implied waiver. The Falkners operated under the old adage that it is better to ask for forgiveness than permission. They had already reroofed with an unapproved material before asking permission. Unlike in the *Lee* case, the ACC did not undertake a course of conduct inconsistent with its later position that the roofing material violated construction standards for the subdivision. The reasoning in *Lee* simply does not apply.

The majority focuses on the statement in the ACC Chairman's letter in which he stated that the ACC "will have to deny the use of this material, unless it can be proved that this [is] an approved roofing material." 40 Kan. App. 2d at 360-61. The majority concludes that this "indicates future conduct on [the ACC's] part." 40 Kan. App. 2d at 361. In my view, the ACC was not compelled to act. The roofing material the Falkners used was not approved when installed. It violated the construction standards for the subdivision. The Falkners were asking the ACC to retroactively change CWHA's standards to bring their roof into compliance. The burden

was on them to convince the ACC that these standards should be changed. I do not conclude that the Falkners' "Request for Exterior Roofing Material Change" shifted the burden to the ACC to take action to prevent CWHA's standards from retroactively and automatically being expanded by default.

Finally, after originally concluding that the Falkners cannot rely on Section 7 of the Declaration of Restrictions because they did not submit a preconstruction application, the majority uses Section 7 to impose a 30-day time limit for the ACC to respond to the Falkners' after-the-fact request to change the list of approved roofing materials. I fail to see the logic of this. The 30-day time limit obviously was designed to protect a homeowner who wants to undertake a building project, makes the appropriate preconstruction application, and then is subjected to unreasonable delays caused by ACC inaction. Those considerations do not apply to the Falkners who used the build-now-ask-permission-later approach.

I respectfully suggest that the concept of waiver does not apply and we should reverse the ruling of the district court.