(106 P.3d 511)
No. 92,285

LYNDON STATE BANK, A Banking Corporation, LYNDON, KANSAS, *Appellee*, v. JUDY J. PRICE, *Appellant*, and CHARLES E. PRICE, Husband and Wife, and BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS.

Opinion filed February 25, 2005.

*Judy Price*, appellant pro se.

*Marian M. Burns*, of Burns, Burns, Walsh & Walsh, P.A., of Lyndon, for appellee Lyndon State Bank.

Before GREEN, P.J., PIERRON and MCANANY, JJ.

MCANANY, J.: Judy Price appeals from the ruling of the Shawnee County District Court granting a judgment of foreclosure to the Lyndon State Bank. We reverse the judgment entered on March 30, 2004, and remand the case for further proceedings.

On September 11, 2003, the Lyndon State Bank (the Bank) instituted foreclosure proceedings on real estate owned by Judy Price and Charles Price (the Prices) which was used to secure their promissory note to the Bank. The Bank claimed the Prices were in default on the note.

The Prices filed their answer on October 13, 2003, in which they admitted most, but not all, of the factual allegations in the petition and asserted that the proceedings should be stayed during the pendency of Charles Price's bankruptcy. Through an exchange of letters in November 2003, the Bank contended that the bankruptcy issue had been resolved. Accordingly, the Bank's attorney sent a proposed journal entry of foreclosure to the Prices' attorney with a request that he approve it and return it for submission to the court for signature and filing.

In February 2004, the Prices' attorney moved the court for leave to withdraw. The court considered and overruled the motion at a status conference held on March 12, 2004. At that status conference, counsel for the Prices explained that his clients would not authorize him to approve the proposed journal entry of foreclosure sent to him by the Bank's lawyer.

On March 16, 2004, the Bank submitted the proposed Journal Entry of Foreclosure to the court pursuant to Supreme Court Rule 170 (2004 Kan. Ct. R. Annot. 216). The Prices filed a timely objection to the journal entry on March 22, 2004, in which they asserted that the court should require the Bank to file a motion for summary judgment.

The Bank responded to the Prices' objections on March 25, 2004, stating that there was no need to file a motion for summary judgment because there were no disputed facts and the bankruptcy issue had been resolved.

The court signed the Journal Entry of Foreclosure on March 30, 2004, and it was filed that same day. The journal entry granted the

Bank a $106,500 personal judgment against Judy Price and ordered foreclosure of the property. The Prices had denied in their answer the Bank's claim for attorney fees, yet the journal entry contained an award to the Bank for fees and costs of $1,310. That same day counsel for the Prices was granted leave to withdraw, and Judy Price, pro se, has perfected this appeal.

Where, as here, the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, we have as good an opportunity to examine and consider the evidence as did the district court and our review is de novo. See *Heiman v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 (1997).

The Bank argues that under facts such as these, Supreme Court Rule 170 is a perfectly acceptable alternative to summary judgment. "If a motion for summary judgment is required in all cases, then there would be no need for pleadings and Kansas Supreme Court Rule 170 would never be applicable," says the Bank. We disagree.

Supreme Court Rule 170(a) (2004 Kan. Ct. R. Annot. 216) provides:

"In all cases where the judge directs that the judgment be settled by journal entry pursuant to K.S.A. 60-258, it shall be prepared in accordance with the directions of the judge. Counsel preparing the journal entry shall, within ten (10) days, unless another time is specifically directed by the judge, serve copies thereof on all other counsel involved who shall, within ten (10) days after service is made, serve on the counsel preparing said journal entry any objections in writing. At the expiration of the time for serving objections, counsel preparing said journal entry shall submit the original, together with any objections received, to the judge for approval. If the counsel cannot agree as to the form of the journal entry, the judge shall settle the journal entry after a hearing."

In some cases the court can easily draft its own judgment form in conformity with K.S.A. 60-258. In other cases it is more efficient for the lawyers to draft the journal entry that memorializes the court's judgment. It is clear that Supreme Court Rule 170 is designed to facilitate this latter situation. Thus, when the court has ruled on a matter, it can assign the task of preparing the journal entry to one party's attorney. The designated drafting attorney then

submits a proposed draft to opposing counsel and thereby places the burden on opposing counsel to object within 10 days. If no objection is raised, the drafting counsel can submit the proposed journal entry to the court for signature and filing. If there are conflicting views on the appropriate language for memorializing the court's judgment, then the issue is submitted to the court for a final resolution. But in any event, the rule applies to the preparation of journal entries that memorialize judgments that have already been ordered by the court. We find no authority for the proposition that Supreme Court Rule 170 may be used as an alternative to summary judgment proceedings.

Here, we find nothing in the record that indicates the district court granted judgment and ordered foreclosure of the property before the court received the Bank's counsel's proposed draft.

The Prices filed a timely answer and were otherwise not in default so as to permit the Bank to invoke the default judgment provisions of K.S.A. 60-255. Further, K.S.A. 2004 Supp. 60-254 defines a judgment as "the final determination of the rights of the parties in an action." The record does not disclose that the court ever made such a determination before signing the journal entry submitted to it over the Prices' objection. Although the Bank, ignoring the issue of its contested claim for attorney fees, argues that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, it failed to avail itself of the provisions of K.S.A. 2004 Supp. 60-256 that would enable the court to summarily render judgment on the Bank's claims. The judgment the Bank seeks to uphold was summarily granted without any effort by the Bank to comply with the statute specifically designed for that purpose. In fact, it was obtained with no motion whatsoever.

Supreme Court Rule 141 (2004 Kan. Ct. R. Annot. 199) sets forth the procedure for submitting a motion for summary judgment under K.S.A. 2004 Supp. 60-256. Our Supreme Court has declared that "Rule 141 is not just fluff." *McCullough v. Bethany Med. Center*, 235 Kan. 732, 736, 683 P.2d 1258 (1984). Just as Supreme Court Rule 141 is not fluff, the statutory provision which it supports for obtaining a judgment in summary fashion is likewise not fluff. Our statutes spell out the ways by which a judgment may be ob-

tained. We do not believe the Supreme Court, in adopting Supreme Court Rule 170, intended for the rule to be used as an end-run around this clear statutory scheme. We can envision a number of ways in which such a use of the rule could be abused. By way of example, Supreme Court Rule 141 gives a party 21 days to respond to a summary judgment motion. The use of Supreme Court Rule 170 would reduce the response time to 10 days. Also, if Supreme Court Rule 170 could be used in this fashion, why be forced to wait until 20 days after commencement of the action before seeking judgment as required by K.S.A. 2004 Supp. 60-256(a)? We are not prepared to sanction such a use of Supreme Court Rule 170 that could easily lead to these and other abuses.

Reversed and remanded.