NOT DESIGNATED FOR PUBLICATION

No. 126,318

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PARKWOOD HILLS HOMES ASSOCIATION,
*Appellee*,

v.

SUNDARAMOORTHY RAMAKRISHNAN AND NIRMALA SUNDARAMOORTHY,
*Appellants*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Submitted without oral argument. Opinion filed May 31, 2024. Affirmed.

*Paul D. Snyder*, of Snyder Law Firm LLC, Overland Park, for appellants.

*Rod J. Hoffman*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P. of Overland Park, for appellee.

Before COBLE, P.J., GREEN, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: This case concerns whether the district court correctly granted Parkwood Hills Homes Association's petition for permanent injunction against Sundaramoorthy Ramakrishnan (Sundar) and Nirmala Sundaramoorthy (Nirmala). The permanent injunction prevents Sundar and Nirmala from renting or leasing their Parkwood Hills house for less than six months. It is undisputed that the Homes Association's Declaration of Restrictions has a covenant preventing homeowners in the Parkwood Hills subdivision from renting or leasing their house "for a period of less than six (6) months." It is also undisputed that Sundar and Nirmala violated this six-month

1

rental covenant. Indeed, at trial, Sundar freely admitted that he rented and continued to rent his and Nirmala's Parkwood Hills house for less than six months.

Even so, on appeal, Sundar and Nirmala argue that we should reverse the district court's permanent injunction for two reasons: (1) because the Homes Association waived its right to impose the covenant by selectively enforcing it, and (2) because the district court violated Kansas Supreme Court Rule 170 (2024 Kan. S. Ct. R. at 234) when it entered the permanent injunction against them. Additionally, Sundar and Nirmala argue that the district court erred when it ruled that the Homes Association could recover attorney fees, expenses, and costs from them.

Nevertheless, there are several problems with Sundar and Nirmala's arguments. Their arguments are conclusory, against reason, and procedurally flawed. Also, notwithstanding those problems, their own bench trial evidence supports the district court's permanent injunction preventing Sundar and Nirmala from renting or leasing their Parkwood Hills house for less than six months.

FACTS

Parkwood Hills is a subdivision in Johnson County, Kansas, which contains 265 houses. In 1996, the original grantor of the Parkwood Hills subdivision—the Developer—recorded a Declaration of Restrictions with the Johnson County Register of Deeds. The Declaration created the Parkwood Hills Homes Association, which was managed by a Board of Directors. The Declaration also stated that all future buyers of lots or land within the Parkwood Hills subdivision were bound by the restrictive covenants within the Declaration. The Declaration stated that the restrictive covenants within it were "to run with the land" and were "binding on all owners within [the Parkwood] subdivision and their grantees, heirs and assigns and all persons claiming

2

them until December 31, . . . 2015, and [would] be automatically continued thereafter for successive periods of 20 years each."

Some of the Declaration's restrictive covenants involved keeping Parkwood Hills a subdivision where only private single family residences are allowed: (1) "No lot in Parkwood Hills shall be used for any purpose except residential one-family residences"; (2) "Each lot shall be used for only single-family residential purposes"; and (3) "[L]ots may be improved, used or occupied only for private residences." Other restrictive covenants involved nuisances. For example, a restrictive covenant prevented any Parkwood Hills homeowner from conducting "noxious or offensive trade or activity . . . upon any lot" or do "anything" on the lot that "may be or become an annoyance or nuisance to the neighborhood." And another restrictive covenant prevented homeowners within the Parkwood Hills subdivision from renting or leasing their house for less than six months. This covenant stated: "No residence or lot or any portion thereof may be leased or rented for a period of less than six (6) months." As for violations of the restrictive covenants, the Declaration provided the Homes Association could enforce the restrictive covenants "by injunction, mandatory or otherwise" and "recover its costs and reasonable attorneys fees in connection with such proceedings."

Sundar and Nirmala bought a house in the Parkwood Hills subdivision in June 2004. Sometime in late 2019, Sundar and Nirmala moved out of their Parkwood Hills house into a nearby house. After they moved but before the end of 2019, Sundar and Nirmala started listing their Parkwood Hills house for rent on a popular rental website on which people could list their houses for rent for less than six months, that is, short term. At some point, Sundar and Nirmala started listing their Parkwood Hills house for rent on other short-term websites. Also, it is undisputed that when Sandar and Nirmala rented the Parkwood Hills house, their guests stayed less than six months.

3

In May or June 2020, Sundar and Nirmala's neighbor complained to the Parkwood Hills Homes Association that too many cars were parked in front of their house. A third-party company oversaw the Parkwood Hills subdivision's day-to-day responsibilities for the Board of Directors. The president and property manager of this company, Bryan Charcut, investigated the neighbor's complaint by speaking to this neighbor as well as Sundar and Nirmala's other neighbors. Based on those conversations, Charcut concluded that Sundar and Nirmala were renting their house. Afterwards, Charcut emailed Sundar about whether he rented the house. Sundar responded that he had been renting the house for "shorter-term[s] . . . than what the declaration allowed."

Charcut reported this information to the Board of Directors. Afterwards, someone from the Board of Directors contacted Sundar to let him know that a restrictive covenant prevented him from renting or leasing his Parkwood Hills house for less than six months. Later, Sundar emailed the Board of Directors' President, Joshua Frandsen, whether the Homes Association could "discuss usage" and "reach a resolution" about him renting his Parkwood Hills house. Frandsen did not respond to Sundar's emails. Rather, on February 5, 2021, the Homes Association filed a petition for permanent injunction against Sundar and Nirmala from renting or leasing their Parkwood Hills house for less than six months.

In its petition, the Homes Association asked the district court to specifically enforce the six-month renting and leasing covenant against Sundar and Nirmala. In doing so, the Homes Association pointed out the plain language contained in the Declaration's restrictive covenant barring Parkwood Hills homeowners from renting or leasing their houses for less than six months. Also, the Homes Association argued that it could prove the four elements needed for a permanent injunction: (1) that there was a substantial likelihood that it would prevail on the merits of its claim; (2) that no adequate legal remedy existed that could address its claim; (3) that the threatened injury to it outweighed whatever damage the proposed injunction could cause Sundar and Nirmala; and (4) that if

4

issued, the injunction would not be against the public's interest. *Board of Leavenworth County Comm'rs v. Whitson*, 281 Kan. 678, Syl. ¶ 2, 132 P.3d 920 (2006).

Regarding success on the merits, the Homes Association argued that it would succeed because it had evidence proving that Sundar and Nirmala regularly rented the Parkwood Hills house. The Homes Association argued that without the permanent injunction, Sundar and Nirmala's short-term rentals would cause irreparable and permanent harm to the Parkwood Hills subdivision (1) by lowering the value of subdivision houses and (2) by harming the "subdivision's ambience and aesthetics." For this same reason it argued that Sundar and Nirmala's short-term renting created permanent threatened injuries that outweighed any harm that Sundar and Nirmala would suffer from "the inconvenience [of] . . . ceasing to rent their home for periods of less than six months." It further argued that enforcing property-related restrictive covenants was in the public's interest.

On March 22, 2021, Sundar and Nirmala answered the Homes Association's petition for permanent injunction. In their answer, Sundar and Nirmala generally denied or lacked sufficient knowledge to respond to the Homes Association's factual or legal arguments. As to the merits of the Home Association's responses, Sundar and Nirmala asserted that "their agreement to rent the Property [was] between [themselves] and [a popular short term rental website], and [was] not designated for short term rentals." Also, they raised an affirmative defense. They argued that the Homes Association was barred by "estoppel and waiver" because it selectively enforced the covenant barring them from renting or leasing their house for less than six months. They argued that the Homes Association's enforcement of the covenant was inconsistent and that this inconsistency may have been based on racial considerations.

Through its litigation with Sundar and Nirmala, the Homes Association learned about two other homeowners in Parkwood Hills who seemed to be renting for short

5

terms—Sharon Powers and Yulin Li. On May 17, 2021, the Homes Association petitioned the district court for a permanent injunction against Powers for violating the six-month renting and leasing covenant. On December 29, 2021, when Powers failed to respond to the Homes Association's petition, the district court entered a default judgment against her. So, at the end of 2021, the Homes Association had obtained a permanent injunction against Powers from renting or leasing her house for less than six months. As for Li, at some point, the Homes Association learned that Li was renting her Parkwood Hills house for short-term stays. After learning this information, Charcut emailed Li about the restrictive covenant. When Li responded to Charcut by email, she told him that she had changed her "online rental presence to not allow short-term rentals."

In any case, the discovery phase of the case went slowly. As litigation continued, Sundar and Nirmala hired and fired two attorneys. By April 2022, it seems that Sundar was representing himself, and in effect, Nirmala, who was also acting pro se. From then on, Sundar continued to represent himself and Nirmala during the proceedings before the district court.

On July 26, 2022, the district court held a pretrial conference, which resulted in the district court filing an amended pretrial order. At this pretrial conference, the district court also granted the Homes Association's request to file an amended petition for permanent injunction. So, the Homes Association filed an amended petition for permanent injunction against Sundar and Nirmala for violating the six-month renting and leasing covenant.

Sundar and Nirmala responded to the Homes Association's amended petition with an amended answer. In their amended answer, Sundar and Nirmala clarified their selective enforcement argument. They asserted that the Homes Association "may have engaged in selective enforcement based on race considerations." They generally contended that because they had evidence of the Homes Association's selective

enforcement of the six-month renting and leasing covenant as well as other restrictive covenants in the subdivision, it meant that the Homes Association was barred by "estoppel and waiver" from enforcing the covenant against them.

Ultimately, on December 21, 2022, the district court held a bench trial on the Homes Association's petition for permanent injunction against Sundar and Nirmala. The Homes Association's case hinged on Charcut's, Frandsen's, and Sundar's testimony. In contrast, Sundar's defense relied on his own testimony and an exhibit indicating that Powers and Li were still violating the six-month renting and leasing covenant.

Charcut and Frandsen testified about their roles in determining whether Sundar and Nirmala had violated the six-month renting and leasing covenant. When asked about how many homeowners had violated the six-month renting and leasing covenant, Charcut and Frandsen both testified that the only potential violators they knew about were Sundar and Nirmala, Powers, and Li. Likewise, when asked during Sundar's cross-examination, both Charcut and Frandsen denied knowing anything about Powers still advertising her house on popular short-term rental websites. Charcut also explained that he knew Li was renting her house now. But he had been told by Li that her rental agreement was for more than six months.

In addition to the deed to Sundar and Nirmala's Parkwood Hills house, the Homes Association admitted the Parkwood Hills' Declaration of Restrictions into evidence without objection. Regarding the purpose of the Declaration's restrictive covenants, Charcut testified that when homeowners do not follow the restrictive covenants, the homeowner may "damage or harm" the "aesthetics" within the subdivision. He testified that if a homeowner does not follow the restrictive covenants, that homeowner might lower the property values in the Parkwood Hills subdivision. Similarly, Frandsen testified that enforcement of the Homes Association's restrictive covenants was important because

7

the covenants "contributed" to the Parkwood Hills subdivision's "more than ordinary value compared to many subdivisions in the [Kansas City] area."

During Sundar's testimony as the Homes Association's witness, Sundar agreed that the Declaration had a restrictive covenant preventing Parkwood Hills homeowners from renting or leasing their houses for less than six months. Sundar admitted that he and Nirmala last rented their Parkwood Hills house about "15 to 20 days ago." He testified that on average, his short-term renters usually stayed "anywhere from two days to 30 days." He also testified that although he was not currently advertising the house for short-term rentals, he intended to do so in the future.

While testifying on his own behalf, Sundar maintained that Powers and Li were still violating the six-month renting and leasing covenant. Sundar, using his computer screen, showed the district court that Powers and Li were actively listing their Parkwood Hills houses on short-term rental websites for stays under six months. When Sundar asked the district court to admit the information from his computer screen into evidence as an exhibit, the district court allowed this information into evidence over the Homes Association's objection.

After Sundar finished presenting his evidence, the district court asked the Homes Association's attorney, Charcut, and Frandsen if they knew whether Powers and Li continued to list their houses on the rental websites. All three told the district court that they had no knowledge of this until seeing Sundar's evidence. It seems that because nobody had complained to the Homes Association about Powers since it got the permanent injunction against her renting or leasing her house short term, the Homes Association assumed that she was complying with the covenant. Likewise, it seems that because nobody had complained to the Homes Association about Li since receiving her email, the Homes Association assumed that Li was complying with the covenant.

In the end, the district court allowed a recess for the Homes Association to determine whether Powers and Li were violating the six-month renting and leasing covenant. It explained that the possibility of Powers and Li still violating the six-month renting and leasing covenant was troubling for several reasons: (1) because the covenant needed to be enforced uniformity; (2) because it seemed that Powers was violating the December 2021 permanent injunction; and (3) because it seemed that Li was lying to the Homes Association about her rental policies. Then, it entered a temporary injunction against all Parkwood Hill homeowners "to prevent any short-term leasing."

At the same time, before recessing, the district court made several fact-findings and rulings on the Homes Association's petition for permanent injunction. It ruled that there was no evidence "whatsoever" supporting Sundar and Nirmala's argument that the Homes Association enforced the six-month renting and leasing covenant against them based on their race, nor was there evidence of selective enforcement. It ruled that the Homes Association was entitled to enforce the restrictive covenants within the Declaration. It ruled that "homeowners associations have a right to make sure they don't have a turnstile of people coming and going." It ruled that the Homes Association's covenant requiring all homeowners to rent or lease their houses for at least six months was reasonable because it ensured consistency that promoted a community within the neighborhood. Then, it made the following statements about attorney fees:

> "The issue of attorneys fees [was] more problematic based upon [what was] coming up now. But that may be an opportunity for you to talk with [the Homes Association's attorney] about that and whether or not this is, you know, selective or not. But if there [was] a provision for attorneys fees [it had] to look at that."

On February 7, 2023, when the district court reconvened the bench trial, it asked the Homes Association to explain what it had learned about Powers and Li. The Homes Association's attorney explained that on January 3, 2023, the Homes Association sent

9

cease and desist letters to both Powers and Li, who the Homes Association's attorney also learned was one of a few co-owners of the house. He explained that the Homes Association had moved to hold Powers in contempt because Powers never responded to the cease-and-desist letter despite already having the permanent injunction against her. As for Li and her co-owners, the attorney explained that one owner emailed him, saying that the house was being leased for at least six months. He explained that although the Homes Association was "a little concerned" about this house because people could easily take down and then relist their house on rental websites, the Homes Association was still taking Li and her co-owners at their word. And he agreed with the district court when the district court judge said the following:

"So right now what I am hearing is the [Homes Association] is not permitting short-term leases. It has notified [Powers, Li, and Li's co-owners] under the assumption that if there was a violation, they are not to rent beyond the limitations and the declarations and if there is a violation right now, it is not knowingly being cause by the [Homes Association] at this point."

After the Homes Association's attorney explained its recent efforts to ensure Powers, Li, and Li's co-owners were not violating the six-month leasing and rental covenant, the district court took judicial notice of the Homes Association's ongoing litigation with Powers. Then, it summarized its findings from the bench trial evidence from December 21, 2022. It ruled that the Declaration allowed the Homes Association to seek injunctive relief against Parkwood Hills homeowners who violated a restrictive covenant. It ruled that the Homes Association's covenant preventing homeowners from renting or leasing their Parkwood Hills house for less than six months was reasonable because it helped create a permanent community where "people know who their neighbors are." It ruled those two other homeowners from the Parkwood Hills subdivision—Powers and Li—had violated the rental covenant. Yet, it further ruled that Sundar and Nirmala had violated the six-month renting and leasing covenant. In doing so, the district court stressed that it found no evidence of racial discrimination. Also, it

10

stressed that from the Home Association's evidence about seeking legal action against Powers and Li, there was no evidence that the Homes Association was specifically "pick[ing] on" him and Nirmala either.

As a result, the district court ruled that the Homes Association had not "waived its ability to enforce the declarations." It rejected Sundar and Nirmala's selective enforcement argument, ordering them to comply with the Declaration's six-month renting and leasing covenant. In addition, it ruled that the Homes Association had a contractual right to recover attorney fees, costs, and expenses from Sundar and Nirmala. As to how much the Homes Association could recover in attorney fees, costs, and expenses, the district court explained to Sundar that the Homes Association would file a fee application accounting for the money it wanted to recover from him and Nirmala.

When it granted the Homes Association's petition, the district court ordered the Homes Association's attorney to write a proposed permanent injunction; this included the district court's findings of fact and conclusions of law to support the permanent injunction. On February 10, 2023, the Homes Association submitted a proposed permanent injunction against Sundar and Nirmala to the district court. About two hours later, the district court adopted the Homes Association's proposed permanent injunction in its entirety. On February 13, 2023, Sundar and Nirmala objected to the district court's permanent injunction by motion. Also, in their appellant brief, they argued that the permanent injunction was invalid because the district court had not given them 14 days to object to the Homes Association's proposed permanent injunction contrary to Kansas Supreme Court Rule 170.

Sundar and Nirmala filed two notices of appeal. On February 28, 2023, Sundar, acting pro se, filed their first notice of appeal. On March 7, 2023, after Sundar and Nirmala retained a new attorney, their new attorney filed another notice of appeal for them. Additional facts are considered below.

11

I. *Does sufficient evidence support the district court's permanent injunction against Sundar and Nirmala?*

On appeal, Sundar and Nirmala's primary argument is that insufficient evidence supported the Home Association's petition for permanent injunction against them. This court reviews the district court's decision to grant or deny injunctive relief for an abuse of discretion. *Roll v. Howard*, 59 Kan. App. 2d 161, 175, 480 P.3d 192 (2020). A district court abuses its discretion if it makes an error of law, an error of fact, or an otherwise unreasonable decision. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017). When considering whether the district court abused its discretion by making legal errors, this court exercises unlimited review. *Roll*, 59 Kan. App. 2d at 175-76. Yet, when considering whether the district court abused its discretion by making factual errors, this court reviews the district court's disputed fact-findings for substantial competent evidence. 59 Kan. App. 2d at 176. "Substantial competent evidence is 'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.'" 59 Kan. App. 2d at 172. Thus, when reviewing a district court's fact-findings for substantial competent evidence, this court cannot reweigh the evidence or make credibility determinations. Instead, this court must review the "evidence in the light most favorable to the prevailing party, disregarding conflicting evidence or other inferences that might be drawn." 59 Kan. App. 2d at 172.

As previously mentioned, to obtain a permanent injunction, a petitioner must prove four elements: (1) that there is a substantial likelihood that the petitioner would prevail on the merits of its claim; (2) that no adequate legal remedy exists that could address the petitioner's claim; (3) that the threatened injury to the petitioner outweighs whatever damage the proposed injunction could cause the opposing party; and (4) that if issued, the injunction would not be against the public interest. *Whitson*, 281 Kan. 678,

Syl. ¶ 2. But under Kansas caselaw, there are also three recognized equitable defenses to enforcing a restrictive covenant:

> "(i) *the right may be lost by laches, waiver, or acquiescence in the violation of such restrictions*; (ii) enforceability may be denied when there has been a change in conditions so radical in nature as to neutralize the benefits of the restrictions and destroy their purpose; and (iii) enforceability may be denied if contrary to the public interest." (Emphasis added.) *Persimmon Hill First Homes Ass'n v. Lonsdale*, 31 Kan. App. 2d 889, Syl. ¶ 2, 75 P.3d 278 (2003).

On appeal, Sundar and Nirmala do not specifically challenge whether the Homes Association proved the four elements needed to obtain the permanent injunction. Rather, Sundar and Nirmala's arguments focus on their affirmative defense—that the Homes Association waived its right to impose the six-month renting and leasing covenant by selectively enforcing it. Although Sundar and Nirmala's arguments before the district court involved race-based discrimination, on appeal, they make a broader selective enforcement argument. They allege that Powers and Li violated the six-month renting and leasing covenant before they did. At the same time, they also stress that the Homes Association did not sue Powers and Li until after suing them. Then, Sundar and Nirmala seemingly argue that this timeline, in and of itself, proves that the Homes Association selectively enforced the six-month renting and leasing covenant against them. In making this argument, Sundar and Nirmala emphasize the district court's fact-finding that there was no evidence of other short-term rentals.

In response, the Homes Association makes several arguments. The Homes Association stresses that Sundar and Nirmala have conceded that they violated the six-month renting and leasing covenant. It stresses that Sundar and Nirmala's only defense is that it selectively enforced the six-month renting and leasing covenant. The Homes Association argues that it presented evidence that it did what it could to ensure Powers and Li complied with the covenant. And it contends that this same evidence proves that it

13

did not selectively enforce the six-month renting and leasing covenant against Sundar and Nirmala.

Highly summarized, Sundar and Nirmala's arguments ask this court to reweigh the trial evidence in their favor while also ignoring the adverse evidence establishing that the Homes Association did not selectively enforce the six-month renting and leasing covenant against them.

Sundar and Nirmala's argument assumes that because they knew about Powers and Li renting in 2016, the Homes Association's Board of Directors should have also known about Powers and Li renting in 2016. Next, they argue that because the Homes Association's Board of Directors petitioned the district court for a permanent injunction against them before doing so against Powers and Li, the Homes Association's Board of Directors must have "singled [them] out . . . for enforcement" of the covenant. Similarly, they conclude that they were singled out because their trial evidence proved that Power and Li continued to violate the six-month renting and leasing covenant. For this same reason, Sundar and Nirmala seemingly take issue with the district court's fact-finding that there were no other short-term rentals.

Plainly, Sundar and Nirmala's arguments hinge on the assumption that the Board of Directors knew everything that they knew. However, Sundar and Nirmala's arguments beg the question:  Why would the Board of Directors know everything that they knew? Regardless of this problem, Sundar and Nirmala's argument also ignores the district court's credibility determinations in Charcut's and Frandsen's favor about trying to stop Powers and Li from violating the six-month renting and leasing covenant. Again, even if Sundar and Nirmala presented evidence that Powers and Li were still listing their houses on short-term rental websites as of the December 21, 2022 portion of the trial, when asked by the district court, Charcut and Frandsen told the district court that they thought that Powers and Li were currently complying with the covenant. They explained that

14

Sundar's evidence about Powers and Li still potentially listing their houses on short-term rental websites was news to them.

So, although Sundar and Nirmala argue that the Board of Directors should have known about Powers' and Li's open and obvious restriction violations of the six-month renting and leasing covenant since 2016, it is readily apparent that the district court disagreed with this proposition. By rejecting Sundar and Nirmala's selective enforcement argument while also granting the Homes Association's petition for permanent injunction, there is no question that the district court credited Charcut's and Frandsen's testimony. As a result, Sundar and Nirmala's argument about their trial evidence proving that the Homes Association waived its right to impose the covenant through selective enforcement requires this court to reweigh the evidence in their favor contrary to this court's well-known standard of review. See *Roll*, 59 Kan. App. 2d at 172. In turn, all of Sundar and Nirmala's sufficiency of the evidence arguments fail as they latch onto the district court supposed ignoring of their evidence about the Homes Association selectively enforcing the covenant against them.

In any case, Sundar and Nirmala's remaining sufficiency of the evidence arguments are a smokescreen. While making their sufficiency of the evidence arguments, Sundar and Nirmala discuss the district court's italicized fact-finding below:

> "[Sundar and Nirmala] contend the covenants at issue are not enforceable as to them because [the Homes Association] has selectively enforced the covenants or, alternatively, the applicable covenants have been waived. *However, there is no evidence of other short term rentals*. In addition, the Court takes judicial notice of Case No. 21CV2197 in which another property owner in Parkwood Hills was enjoined from renting a home for periods of less than six months." (Emphasis added.)

Sundar and Nirmala argue that because their trial evidence showed that Powers and Li were still listing their Parkwood Hills houses for rent for less than six months on

15

short-term rental websites, the district court's fact-finding about there being no other evidence of other short-term rentals "directly contradicted" the "significant evidence of other short-term rentals" that they admitted at trial. But in making this argument, Sundar and Nirmala never address the district court's fact-finding that "[Sundar and Nirmala] contend the covenants at issue are not enforceable as to them because [the Homes Association] has selectively enforced the covenants or, alternatively, the applicable covenants have been waived." Nor do they address its fact-finding that "the Court [took] judicial notice of Case No. 21CV2197 in which another property owner in Parkwood Hills was enjoined from renting a home for periods of less than six months."

Those fact-findings, however, clearly prove that the district court meant that there was no evidence of other short-term rentals operating with the Homes Association's approval. The district court mentioned Sundar and Nirmala's selective enforcement argument because it was about to reject it with the Homes Association's evidence that it treated all known violators of the six-month renting and leasing covenant the same way. Why else did the district court explicitly mention the Homes Association's civil case number for its litigation against Powers? Also, Charcut and Frandsen testified that the only potential violators of the six-month renting and leasing covenant that they ever knew about were Sundar and Nirmala, Powers, and Li as well as her co-owners. As just explained, the district court made a credibility determination in Charcut's and Frandsen's favor. Thus, any evidence that Sundar and Nirmala may have had about the Homes Association knowing about other potential homeowners using their houses for short-term rentals is irrelevant under this court's rule against reweighing evidence. In short, the district court made a credibility determination against Sundar and Nirmala. So, this court is bound by that determination. See *Roll*, 59 Kan. App. 2d at 172.

Finally, Sundar and Nirmala's bald assertions that the district court indicated that it intended to deny the Homes Association's petition before recessing the bench trial on December 21, 2022, is baseless. In a few places in their brief, Sundar and Nirmala

16

contend that the district court abused its discretion by granting the Homes Association's petition for permanent injunction because immediately before recessing, it suggested that it would deny the Homes Association's petition.

But nothing in the record supports this argument. In fact, immediately before recessing, the district court told Sundar that it was "not seeing any evidence of racial discrimination here whatsoever." It told Sundar that the Homes Association had a right to enforce its covenants. It explained that it was recessing because it wanted to ensure that the Homes Association was applying the six-month renting and leasing covenant consistently. Then, after saying that the Homes Association needed to consistently enforce the six-month renting and leasing covenant, it told Sundar that it was not sure that his and Nirmala's selective enforcement argument was going to be "a winner for [them] in the long run."

To conclude, none of Sundar and Nirmala's sufficiency of the evidence arguments are persuasive. Most of their arguments hinge on cherry-picked facts to support their arguments. Meanwhile, Sundar and Nirmala's remaining arguments rely on ignoring adverse facts proving that substantial competent evidence supported the district court's permanent injunction against them. Thus, we affirm the district court, holding that sufficient evidence supported the district court's permanent injunction against Sundar and Nirmala from renting or leasing their Parkwood Hills house for a period less than six months.

II. *Did the district court commit reversible error when it violated Kansas Supreme Court Rule 170?*

Kansas Supreme Court Rule 170 (2024 Kan. S. Ct. R. at 234) is procedural; it controls what happens when the district court directs a party to prepare a proposed order containing the district court's ruling. Subsection (b)(1) provides that unless the district

court rules otherwise, when the district court directs a party to prepare a proposed order, that party must serve the proposed order to all other parties within the next 14 days. Subsection (b)(1)(B) further provides that the party preparing the proposed order must notify the other parties that they have 14 days to object to the proposed order or else "the order will be filed with the court." Supreme Court Rule 170(b)(1)(B) (2024 Kan. S. Ct. R. at 234.) Similarly, subsection (c) states that any "objection to a proposed order must be served—no later than 14 days after service of the proposal—on the party that drafted it." Supreme Court Rule 170(c) (2024 Kan. S. Ct. R. at 234.)

Sandar and Nirmala's argument about the district court violating Kansas Supreme Court Rule 170 requires this court to review the Kansas Supreme Court rules. Whether the district court violated a Kansas Supreme Court rule is a question of law over which this court exercises unlimited review. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). Also, whenever "the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations," this court's review is unlimited because this court is in the same position as the district court to "examine and consider the evidence." *Lyndon State Bank v. Price*, 33 Kan. App. 2d 629, 631, 106 P.3d 511 (2005) (citing *Heiman v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 [1997]).

Nevertheless, when this court reviews a Supreme Court rule that gives the district court discretionary power, this court reviews the district court's use of that discretionary power for an abuse of discretion. The district court abuses its discretion if its decision is based on an error of law, an error of fact, or some other unreasonable action. *Gannon*, 305 Kan. at 868. Regarding Rule 170 specifically, in *Lyndon State Bank*, this court held that Rule 170 was a discretionary rule. 33 Kan. App. 2d at 629. Additionally, it held that Rule 170 existed to help district courts. It explained that Rule 170 helped district courts with productivity because in some cases, it was more efficient for the district court to

18

direct the prevailing party to prepare a proposed order that "memorialize[d] the court's judgment." 33 Kan. App. 2d 629, Syl. ¶ 2.

Here, the Homes Association tried to comply with Rule 170(b)(1)(B). On February 10, 2023, it submitted its proposed order for permanent injunction as well as a notice to Sundar and Nirmala that they had 14 days to object to its proposed permanent injunction. About two hours later, however, the district court entered a permanent injunction against Sundar and Nirmala, in which it essentially adopted the Homes Association's proposed permanent injunction word for word. So, Sundar and Nirmala are correct; the district court violated Rule 170 when it entered the Homes Association's proposed permanent injunction the same day that the Homes Association submitted its proposed permanent injunction.

Generally, upon establishing an error, the party who benefited from the error must prove that the error was harmless. In their appellant's brief, Sundar and Nirmala assume that this court will apply the statutory harmless error test to determine whether the district court's failure to give them 14 days to object to the Homes Association's proposed order under Rule 170 prejudiced them. Under the statutory harmless error test, if a party proves that a statutory error occurred, then the party who benefited from the error must prove that "there is no reasonable probability the error affected the trial's outcome in light of the entire record." *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012).

But Sundar and Nirmala's assumption about this court applying the statutory harmless error test ignores two things:  (1) that a Kansas Supreme Court Rule is not a statute and (2) that the underlying purpose of Rule 170 is to help with the district court's efficiency. As just explained, in *Lyndon State Bank*, this court held that Rule 170 was a discretionary rule created to help district courts with productivity. 33 Kan. App. 2d at 629. Later on, in *In re Marriage of Anjard*, No. 103,426, 2011 WL 5389679, at *8 (Kan. App. 2011) (unpublished opinion), this court relied on *Lyndon State Bank*'s Rule 170

analysis to reject a husband's argument that this court must reverse the district court's property division determination because his wife's counsel had "repeatedly" violated Rule 170. The *In re Marriage of Anjard* court held:

"The court is always free to draft its own journal entry without any assistance from counsel. By ordering one party to prepare the journal entry and another to review it, the parties can be assured that the journal entry truly reflects the court's order. Enforcement of the rule is left to the sound discretion of the district court, since its whole purpose is to provide assistance to the court. *Therefore, for an appellate court to reverse or remand a case due to failure comply with this procedural rule would be rare and we are unable to locate any such Kansas cas*es. It is up to the district court to impose sanctions for noncompliance when appropriate. *In this case, a review of the transcripts filed with the record on appeal support*[s] *the accuracy of the journal entries filed in the case. Accordingly, we can find no error that would warrant reversal as* [*appellant*] *proposes*." (Emphases added.) 2011 WL 5389679, at *8.

As a result, the *In re Marriage of Anjard* court held that absent a rare circumstance, this court will not reverse a district court's final order for a Rule 170 violation since the district court's decision to invoke Rule 170 was discretionary to begin with. Since deciding *In re Marriage of Anjard* in 2011, this court has continued to rely on *In re Marriage of Anjard*'s Rule 170 analysis when the record on appeal proved that the Rule 170 violation was harmless. See *In re Marriage of Santee*, No. 117,222, 2018 WL 475477, at *4-6 (Kan. App. 2018) (unpublished opinion); *In re Marriage of Crouse*, No. 113,831, 2016 WL 3856677, at *5 (Kan. App. 2016) (unpublished opinion); and *Washington Mutual Bank v. Brooks*, No. 110,423, 2014 WL 4082084, at *5 (Kan. App. 2014) (unpublished opinion).

At this point, we note that the Homes Association's response to Sundar and Nirmala's argument about the district court violating Rule 170 is problematic. The Homes Association titles its section responding to Sundar and Nirmala's Rule 170 argument as

follows:  "The District Court did not err in entering the proposed Permanent Injunction the day it was submitted by Plaintiff." So, based on the Homes Association's title, one would think that the Homes Association would directly address Sundar and Nirmala's Rule 170 argument. But the Homes Association does not do this. In fact, the brief never cites Rule 170 and never uses the word harmless when addressing Sundar and Nirmala's argument. Rather, the brief asserts that their first and second arguments on appeal are identical because both focus on the district court's fact-finding in the permanent injunction that there is no evidence of other short-term rentals.

Yet after saying this, the Homes Association seemingly makes a harmless error argument. In doing so, the Homes Association emphasizes two things:  (1) that at trial, Sundar and Nirmala admitted that they violated the six-month renting and leasing covenant; and (2) that at trial, Sundar and Nirmala presented no evidence that the Homes Association selectively enforced the six-month renting and leasing covenant against them. Based on the Homes Association's title for this issue and apparent harmless error argument, perhaps the Homes Association recognizes that the district court erred but is unwilling to acknowledge this or concede any argument to Sundar and Nirmala.

Notwithstanding the Homes Association's lackluster answer to Sundar and Nirmala's Rule 170 argument, Sundar and Nirmala's argument about the district court violating Rule 170 is unpersuasive because of its own failings.

To start, Sundar and Nirmala raise their specific Rule 170 objection for the first time on appeal. Before the district court, Sundar and Nirmala's Rule 170 objection challenged the Homes Association's evidence supporting the elements needed for a permanent injunction. The only statement related to the ongoing existence of short-term rentals in Sundar and Nirmala's Rule 170 objection was that under their evidence, the Homes Associations had not stopped Powers and Li from renting for short terms. Yet now, Sundar and Nirmala's entire argument regarding why the district court's violation of

21

Rule 170 prejudiced them concerns the district court's fact-finding that there was no evidence of other short-term rentals.

Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) requires appellants to explain why an issue that was not raised before the district court should be considered for the first time on appeal. In the past, our Supreme Court has held that it will strictly enforce this rule. It has held that appellants risk waiving and abandoning their arguments if they fail to explain why they are raising their arguments for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Here, Sundar and Nirmala are raising their appellate argument about the district court's finding that there was no evidence of other short-term rentals as the basis for their Rule 170 objection for the first time on appeal. In doing so, though, they never acknowledge that they have raised this argument for the first time on appeal.

In other words, they include no arguments to this court regarding why it should consider their newly raised argument relying on the district court's finding that there was no evidence of other short-term rentals for the first time on appeal. Based on the preceding, we follow our Supreme Court precedent about strictly enforcing Rule 6.02(a)(5). In turn, we hold that Sundar and Nirmala have waived and abandoned their Rule 170 objection before the district court by changing the basis for their objection on appeal without explanation. See *Godfrey*, 301 Kan. at 1044.

Next, Sundar and Nirmala include very little analysis in their brief. Indeed, their entire argument is as follows:

> "Here, given the central/key evidence in support of [the Homes Association's] selective enforcement defense was that other houses in the neighborhood had rented their houses on a short-term basis for years without [the Homes Association's] intervention, it was significant that this one piece of evidence was misstated in the proposed journal entry,

22

and then was quickly adopted by the District Court. Therefore, this Court cannot conclude there was 'no reasonable probability' that the error did not affect the outcome [of their trial]."

But why was this one piece of allegedly misstated evidence significant? Why would the district court's immediate adoption of a single fact-finding prove prejudice? Simply put, Sundar and Nirmala's argument is conclusory; they assert that the district court's quick adoption of the disputed fact-finding from the Homes Association's proposed order proves that district court's Rule 170 error substantially affected their rights or the outcome of their case. K.S.A. 2023 Supp. 60-261; see also *State v. Ward*, 62 Kan. App. 2d 721, 733, 522 P.3d 337 (2022), *aff'd* 317 Kan. 822, 539 P.3d 1042 (2023) (explaining that conclusory arguments are mere assertions without evidential support). Yet, in making their argument, they never explain how the district court's quick adoption of the disputed fact-finding substantially affected their rights. Nor do they explain how the district court's quick adoption of the disputed fact-finding substantially affected the outcome of their case. Rather, Sundar and Nirmala simply state that the district court's quick adoption of the Homes Association's proposed permanent injunction containing the disputed fact-finding was "significant" without additional analysis.

Next, Sundar and Nirmala's argument is illogical. Sundar and Nirmala implicitly question the district court's impartiality based on its quick adoption of the Homes Association's proposed permanent injunction containing the disputed fact-finding. But nothing supports Sundar and Nirmala's suggestion that the district court intentionally prejudiced them by violating Rule 170. Indeed, nothing supports their suggestion because their argument is the logical fallacy of affirming the consequent, which can be broken down into the following syllogism:  (1) If a district court receives a proposed permanent injunction with a disputed fact-finding, then the district court will enter the proposed permanent injunction quickly; (2) The district court entered a proposed permanent injunction quickly; (3) Therefore, the district court received a proposed permanent

23

injunction with a disputed fact-finding. We cannot logically infer the truth of the antecedent of the conditional premise (the district court received a proposed permanent injunction with a disputed fact-finding) by affirming its consequent (the district court entered a proposed permanent injunction quickly). For the conditional premise asserts only that if its antecedent is true, then its consequent is true, not that if its consequent is true the antecedent is then true. Because the district court may have entered the proposed permanent injunction quickly for a variety of reasons, the syllogism's conclusion, and thus, Sundar and Nirmala's argument, is flawed.

So, although the district court erred by immediately adopting and then filing the Homes Association's proposed permanent injunction, Sundar and Nirmala's arguments why they are entitled to reversal of the permanent injunction are unconvincing. They imply that the district court's quick adoption of the Homes Association's proposed permanent injunction somehow prejudiced them because they could not challenge the district court's fact-finding that there was no evidence of other short-term rentals. Nevertheless, as just explained, the district court understood the problems with Powers and Li continuing to violate the six-month renting and leasing covenant. In context, the district court's fact-finding was reasonable and supported by the trial evidence. In addition, Sundar and Nirmala's arguments about how the district court's violation of Rule 170 prejudiced them are conclusory and illogical.

As explained in *In re Marriage of Anjard*, reversing a district court for violating Rule 170 would be rare. 2011 WL 5389679, at *8. Here, the record supports that the proposed permanent injunction drafted by the Homes Association correctly recited the district court's findings of facts and conclusions of law from the bench trial. Thus, the record supports that any error resulting from the district court's violation of Rule 170 when it adopted the Homes Association's proposed permanent injunction the same day it was filed was harmless. In addition, Sundar and Nirmala's arguments why we should reverse the district court's permanent injunction because of its violation of Rule 170 are

unpersuasive. So, although the district court did not strictly comply with Rule 170, we affirm the district court's permanent injunction against Sundar and Nirmala renting and leasing their Parkwood Hills house for less than six months.

III. *Did the district court err when it ruled that Parkwood Hills Homes Association was entitled to attorney fees, costs, and expenses?*

Sundar and Nirmala's argument about the district court's ruling on attorney fees, costs, and expenses requires this court to interpret language in the Homes Association's Declaration of Restrictions. When doing so, "this court uses the same rules it applies to interpret contracts to interpret restrictive covenants in deeds." *Falkner v. Colony Woods Homes Ass'n*, 40 Kan. App. 2d 349, 353, 198 P.3d 152 (2008) (citing *South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, 750-51, 549 P.2d 1035 [1976]). "The interpretation and legal effect of written instruments are matters of law." *Falkner*, 40 Kan. App. 2d at 353. As a result, this court exercises unlimited review when interpreting language within the Declaration of Restrictions. 40 Kan. App. 2d at 353.

While engaging in this analysis, this court's primary consideration is the intent of the grantors when drafting the Declaration. Additionally, when the plain language of a disputed provision clearly establishes the grantor's intent, this court must construe that provision according to the grantor's intent without further analysis. 40 Kan. App. 2d at 353. As for when the district court may award a party attorney fees, costs, and expenses, our Supreme Court has consistently held that "in Kansas, attorney fees cannot be awarded absent statutory authority or agreement." *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 939, 135 P.3d 1127 (2006).

In their appellants' brief, Sundar and Nirmala challenge the district court's ruling that the Homes Association could recover attorney fees, costs, and expenses from them. They seemingly argue that the Homes Association cannot recover attorney fees, costs, or

expenses from them because the district court erred by granting the Homes Association's petition for permanent injunction. Yet, as already discussed, sufficient evidence supported the district court's order granting the Homes Association's petition for permanent injunction. So, Sundar and Nirmala's assertion that they do not owe the Homes Association attorney fees, costs, and expenses because insufficient evidence supported the district court's permanent injunction falls short of the mark.

Also, the Developer that recorded the Declaration included a provision in the Declaration about recovering attorney fees, costs, and expenses from Parkwood Hills subdivision homeowners who violated restrictive covenants immediately before listing the Parkwood Hills' restrictive covenants. This provision stated: "'The following restrictions or protective covenants shall be kept by all persons owning, occupying or using said lots and land and may be enforced by injunction, mandatory or otherwise; the Association may recover its costs and reasonable attorneys fees in connection with such proceedings.'" As grantees of the Declaration, Sundar and Nirmala were bound by this rule allowing the Homes Association to recover attorney fees, costs, and expenses from them for violating a restrictive covenant.

On appeal, Sundar and Nirmala point to the well-known rule that attorney fees must be reasonable. *Johnson*, 281 Kan. at 940 (reviewing the provision on reasonable attorney fees under the Kansas Rules of Professional Conduct 1.5[a] [2024 Kan. S. Ct. R. at 330]). Sundar and Nirmala concede that they appealed the district court's permanent injunction before the district court had determined how much in attorney fees, costs, and expenses they owed the Homes Association. Even so, Sundar and Nirmala complain "that at least some of the fees incurred by [the Homes Association] were not reasonable." So, it seems that Sundar and Nirmala want this court to rule on the reasonableness of the Homes Association's requested attorney fees, costs, and expenses.

26

Under K.S.A. 2023 Supp. 60-2102(a)(4), this court has jurisdiction as a matter of right over final decisions. Whether this court has jurisdiction to entertain an appeal is a question of law over which this court has unlimited review. *Via Christi Hospitals Wichita v. Kan-Pak*, 310 Kan. 883, 889, 451 P.3d 459 (2019). In *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 374, 789 P.2d 211 (1990), our Supreme Court determined that "[a] decision on the merits is final for purposes of appeal even if a request or motion for attorney fees attributable to the case has not yet been determined." So, we may have jurisdiction to consider an appeal under K.S.A. 2023 Supp. 60-2102(a)(4) even when the district court has not ruled on the exact amount of attorney fees, costs, and expenses owed. But if a losing party filed its notice of appeal with this court before the district court determined how much attorney fees, costs, and expenses that the losing party owed, it necessarily follows that the losing party cannot challenge the reasonableness of the district court's calculation of attorney fees, costs, and expenses to this court.

In summary, Sundar and Nirmala's arguments about the district court wrongly awarding the Homes Association attorney fees, costs, and expenses involve ignoring the plain language of Parkwood Hills' Declaration of Restrictions and ignoring this court's rules on jurisdiction. Thus, we reject Sundar and Nirmala's arguments and affirm the district court.

Affirmed.